(Decided 7th December, 1892.)

RICHARD C. FRANCIS, and THE BALTIMORE AND HARFORD TURNPIKE COMPANY *vs.* WILLIAM H. WEAVER, and others.

*Turnpike Company—Proceeding against Company for Non repair of Road under Act of 1812, ch. 78, sec. 26—Special jurisdiction—Appeal.*

On the 9th of March, 1892, proceedings were instituted before a justice of the peace of Baltimore City against the B. and H. Turnpike Company, for not keeping its road in good repair at Darley Park, in said city. The proceedings were instituted and

conducted under the provisions of sec. 26 of the Act of 1812, ch. 78. This section required a precept to be issued to a constable requiring him to summon a jury of five persons to meet at a certain time, to be named in the precept, "at the place in the said road which shall be complained of, of which meeting notice shall be given to the keeper of the gate or turnpike nearest thereto; and the said justice shall at such time and place, on the oaths or affirmations of the said persons, inquire whether the said road or any part thereof is in such good and perfect order and repair as aforesaid, and shall cause an inquisition to be made and certified under the hands of himself and a majority of said persons; and if the road shall be found by the said inquisition to be out of order and repair, contrary to the true intent and meaning of this Act, the said justice shall certify and send one copy of said inquisition to the Judges of the County Court," (Criminal Court of Baltimore City by the Act of 1890, ch. 605) "who shall thereupon cause to be brought before them the body or bodies of the person or persons intrusted by the company with the care and superintendence of such part of the said road as shall be found to be defective; and if the person or persons intrusted by the company aforesaid shall be convicted of the offence by the said inquisition charged, the said Court shall fine the said person or persons, according to the nature and aggravation of the neglect, in their discretion, not exceeding one hundred dollars for every week such place shall have been out of order and repair; and in case the said company should neglect to have the said place repaired within fifteen days after the aforesaid fine shall have been laid, then the said Court shall proceed to fine the said president, managers and company, in their discretion, not exceeding two hundred dollars," &c. The precept was issued on the 9th of March, 1892, and the jury were summoned to meet at Darley Park on the 14th of the same month to make inquiry as to the condition of said road, and notice of the meeting was served upon the keeper of the toll-gate nearest to the place of meeting. The finding of the jury was that said Baltimore and Harford Turnpike was not in good and perfect order and repair, and that the superintendent of said road, had not kept the same in good and perfect order and repair for the space of at least ninety days. The proceedings were returned to the Criminal Court of Baltimore City. A motion was made to quash the inquisition, the fourth and sixth reasons assigned being as follows: 4th, Because no sufficient copy or notice of the precept by the justice of the peace was served upon said defend-

Francis, *et al. vs.* Weaver, *et al.*

ant corporation or its agent. 6th. Because of the vagueness and uncertainty of said inquisition, and for the defects apparent upon its face. The motion was overruled by the Court. The defendant corporation then submitted under a plea of *non cul.*, to be tried by a jury, and was found guilty, and the Court imposed a fine of $50 and costs. On appeal, it was HELD :

1st. That the finding of the jury of inquisition, that said turnpike was not in good and perfect order and repair, without specifying that to be its condition at the place complained of, was too vague and uncertain.

2nd. That the Court below erred in overruling the motion to quash ; the record showing conclusively that the proceedings in themselves were legally sufficient to have justified the Court in sustaining the motion under the fourth and sixth reasons assigned.

3rd. That the inquisition found all the requisite facts, and ascertained the condition of the road ; and nothing remained for the Court to do but to enter up judgment in accordance with the finding of the inquisition, unless there was interposed some appropriate motion or objection to the regularity of the proceedings, or improper conduct on the part of the justice or of the jurors.

4th. That the Court below was without authority to grant a jury trial to the company, and the verdict being against the road, the Court erroneously imposed a fine of $50.

5th. That as the inquisition found said road to be out of repair, and that the superintendent of the road had not for the period of ninety days, kept the same in repair, the Court under the provisions of the statute should have imposed a fine upon the superintendant of not less than one hundred dollars for every week such place was out of order and repair.

6th. That the president, managers, and company were not liable to the imposition of a fine by the Court until the company had for the space of fifteen days from the laying of the fine on the superintendent, neglected to repair said place which was out of repair.

7th. That as the Court below was proceeding under a special jurisdiction conferred by statute, its judgment could not be reviewed on appeal in the absence of a provision in the statute authorizing an appeal.

APPEAL from the Criminal Court of Baltimore City.

The case is stated in the opinion of the Court. The Baltimore and Harford Turnpike Company was incorporated by the Act of 1816, chapter 48, and by the Act of 1819, chapter 50, the Act of 1812, chapter 78, (the charter of the Washington Turnpike,) was made part of its charter. The 26th section of the Act of 1812, chapter 78, is in the following language, viz., "That if the said company, after the said road be completed as aforesaid, shall neglect to keep the said road in good and perfect order for the space of fifteen days, and information shall be given to any justice of the peace within the county, such justice shall issue a precept, to be directed to any constable within the county, commanding him to summon five disinterested persons, to be named by the said justice in the said precept, to meet at a certain time, in the said precept to be mentioned, at the placé in the said road which shall be complained of, of which meeting, notice shall be given to the keeper of the gate or turnpike nearest thereto; and the said justice shall at such time and place, on the oaths or affirmations of the said persons, enquire whether the said road or any part thereof, is in such good and perfect order and repair as aforesaid, and shall cause an inquisition to be made and certified under the hands of himself, and a majority of the said persons; and if the road shall be found by the said inquisition to be out of order and repair, contrary to the true intent and meaning of this Act, the said justice shall certify and send one copy of the said inquisition to the Judges of the County Court, who shall thereupon cause to be brought before them the body or bodies of the person or persons intrusted by the company with the care and superintendence of such part of the said road as shall be found defective; and if the person or persons intrusted by the company aforesaid, shall be convicted of the offence by the said inquisition charged, the said

Court shall fine the said person or persons according to the nature and aggravation of the neglect, in their discretion, not exceeding one hundred dollars for every week such place shall have been out of order and repair; and in case the said company should neglect to have the said place repaired within fifteen days after the aforesaid fine shall have been laid, then the said Court shall proceed to fine the said president, managers and company, in their discretion, not exceeding two hundred dollars, for the use of the county, under the direction of the Levy Court.''

The fourth and sixth reasons assigned in the motion to quash are as follows:

*Fourth.* Because no sufficient copy or notice of the precept by said E. Beatty Graff, was served upon said defendant corporation or its agent, as by law required.

*Sixth.* Because of the vagueness and uncertainty of said inquisition, and for the defects apparent upon its face.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, and McSHERRY, J.

*Peter E. Tome,* and *William H. Dawson,* for the appellants.

*Fielder C. Slingluff,* for the appellees.

ROBERTS, J., delivered the opinion of the Court.

On the 9th of March, 1892, William H. Weaver and twelve others, filed their petition addressed to E. Beatty Graff, Esq., a justice of the peace of the State of Maryland, in and for Baltimore City, alleging that the roadbed of the Baltimore and Harford Turnpike Company for more than fifteen days then last past, had not been in good and perfect order, but that the same had been

in wretched order and repair; that the mud on the same had been so deep, as to make it impossible to cross said road, and that it was very laborious for teams and wagons to drive over the same; and that said road-bed was lower in the middle than on the sides, and, because of the imperfect drainage caused by said state of affairs, the water falling on the road-bed accumulated in the middle, and made it almost impassable and unfit for travel. The petitioners then pray said justice to issue his precept directed to some constable in accordance with ch. 78, of the Acts of 1812, amended by ch. 50, of the Acts of 1819, and further amended by ch. 605, of the Acts of 1890, commanding him to summon five disinterested persons to meet on said road at Darley Park, in the City of Baltimore, *where the same is in bad condition,* at a time to be named in said precept, for the purpose of making an inquisition upon the condition of said road. In compliance with the prayer of said petition, the justice, on the 9th of March, 1892, issued his precept to a constable of said city, authorizing and directing him to summon five persons named therein, to meet on the Baltimore and Harford Turnpike Company's road at Darley Park, in the City of Baltimore, on Monday, March 14th, 1892, at 10 o'clock, A. M., for the purpose of inquiring *whether said road or any part thereof in the City of Baltimore was in good and perfect order and repair,* and to certify the condition of said road, under their hands and seals, in accordance with the law, made for such purposes. The constable made return of the service of the precept, that he had "summoned *all.*" On the said, 14th of March, 1892, the said five persons, named in said precept, together with said justice, met at Darley Park in said city, and in virtue of said petition of William H. Weaver and others,. proceeded to make inquisition of the order and repair of said road, and found that *said Baltimore and Harford Turnpike Road was not in good*

*and perfect order and repair*, and that Richard C. Francis, the party entrusted by the Company with the care and superintendence of said road, had not kept said road in good and perfect order and repair, for the space of, at least *ninety days*, but the same had been in very bad order and repair, and had been the source of much annoyance and injury to the persons, who had been compelled to travel over and pay toll on said road. It does not appear from the record how the proceedings before the justice in the finding of the inquisition got into the Criminal Court. The provisions of the 26th section of the Act of 1812, ch. 78, require that "if the road shall be found by the said inquisition to be out of order and repair, contrary to the true intent and meaning of the Act, the said justice shall certify, and send one copy of the said inquisition to the Judges of the County Court," (amended by the Act of 1890, ch. 605, so that the certificate of the justice, and copy of the inquisition, are now required to be sent to the Criminal Court of Baltimore City,) "which Court, shall thereupon cause to be brought before it, the body or bodies of the person or persons, intrusted by the company with the care and superintendence of such part of said road, as shall have been found defective," &c. The record shows that on the 14th of April, 1892, the petition, the precept, notice to toll-gate keeper, and the inquisition, were filed in the Criminal Court, and on the same day, the said Francis, and the Turnpike Company filed a motion to quash the inquisition, and assigned various reasons therefor. On the same day, the Court overruled the motion to quash the inquisition. Whether there was error in the action of the Criminal Court on this motion presents the first question for our consideration. The petitioners allege in their petition that the road-bed of the Baltimore and Harford Turnpike Company, for more than fifteen days last past had not been in good and perfect order, etc., and then pray

the justice to direct his precept to some constable, commanding him to summon five disinterested persons to meet on said road at Darley Park, in Baltimore City, *where the same is in bad condition, etc.* The justice issues his mandate, requiring the constable to summon the five persons named therein to meet at Darley Park, in the City of Baltimore, for the purpose of inquiring, whether the *said road, or any part thereof, in the City of Baltimore,* is in good and perfect order and repair, and to certify the condition of said road, &c. The said 26th sec. of the Act of 1812, requires the justice to state in his precept the time when, and the place where, said five disinterested persons shall meet, which place shall be, "*at the place in the said road, which shall be complained of,*" of which meeting notice shall be given to the keeper of the gate or turnpike nearest thereto. The notice which was given, was addressed to the keeper of the first toll-gate on the Harford Road, and informed him that a jury would meet at Darley Park, in the City of Baltimore, etc., for the purpose of making an inquisition as to whether the Baltimore and Harford Turnpike Company's road was in good and perfect order and repair. The inquisition does not find that the road was *not* in good, and perfect order, and repair, at the place in said road, which had been complained of, but finds that the said Baltimore and Harford Turnpike is not in good and perfect order and repair. The inquisition makes reference to the precept, but the precept says, they shall inquire whether the said road, or any part thereof, in the City of Baltimore is in good and perfect order and repair. Whilst statutes of this character are entitled to be liberally construed, yet in the enforcement of the penalties provided by their provisions, there should be, at least, reasonable certainty.

We think the Court erred in overruling the motion to quash. The record shows conclusively that the pro-

ceedings in themselves were legally sufficient to have justified the Court in sustaining the motion under the fourth and sixth reasons assigned. There are, however, other questions in the record which we think entitled to our consideration, and will largely aid in the disposition of certain questions of practice under statutes of the character we have before us in this appeal. After the proceedings in this case reached the Criminal Court, and the motion to quash had been overruled, the appellants filed a plea in abatement, which was also overruled. The further progress of the case appears to have been that the defendant corporation submitted, under a plea of *non cul.*, to be tried by a jury, and was found guilty, and the Court imposed a fine of fifty dollars and costs. It is almost impossible to ascertain with any degree of certainty from the record, that which was actually done in the Criminal Court, but the appellees in their brief on folio three say: "The Court granted the Turnpike Company a jury trial, and, the verdict being against the road, the Judge imposed a fine of $50." This view was apparently assented to by the counsel for the respective parties in the argument in this Court. It now becomes necessary to inquire whether the proceeding, as above stated, is within the provisions of the Act of Assembly under which the appellant corporation finds its existence, or of any Acts amendatory thereto.

The appellees in their brief state that, "From the view which the Court below took of the statute, the jury of inquisition acted as a grand jury, and found an indictment only. On this indictment the appellant asked for a jury trial, which was granted, and appellant was convicted." We fail to see the analogy between the proceeding contemplated by the Act of 1812, ch. 78, sec. 26, which provides a penalty, and the manner of its enforcement, and an indictment found by a grand jury. The remedy here is only a statutory method of dealing sum-

marily with the company and its officers, in failing to keep the road in good repair. The company, by its Act of incorporation, assumed a duty to the public, which was the consideration moving the Legislature, in granting a franchise, that enabled the company to collect tolls from those who used the road. The primary condition very reasonably was that it should keep its roadbed in good and perfect repair; failing to do so, it incurred a penalty, which could be readily enforced, not by a cumbersome proceeding, but by information to be given to a justice of the peace within the county, (since the Act of 1890, ch. 605, in the Criminal Court of Baltimore City, if the portion of the road, in bad repair, was within the city,) whose duty, it then was, to issue his precept, &c., as required by the said 26th section. The justice then certifies the finding of the jury, and sends one copy of said inquisition to the Criminal Court, in compliance with the provision of said section 26. The inquisition ascertains the only fact, which it was called upon to show; and that was the actual condition of the road for the space of at least fifteen days preceding the giving of information to the justice, and for as much longer time as the testimony shows the road to have been out of repair. If the inquisition finds the road to be out of order and repair, it then became the duty of the justice to certify the fact, and send one copy of the inquisition to the Criminal Court of Baltimore City, as required by the provisions of the Act of 1890, ch. 605. The Judge of said Court was then empowered to cause to be brought before him the body, or bodies of the person or persons intrusted by the company with the care and superintendence of *such part of said road, as shall be found defective,* and if said person or persons, &c. shall be *convicted* of the offence by the said inquisition charged, the Court shall thereupon find the said person or persons, according to the nature and aggravation of the

neglect, in its discretion, not exceeding one hundred dollars, *for every week such place shall have been out of order and repair;* and in case, the said company should neglect to have the said place repaired, within fifteen days after the aforesaid fine shall have been laid, then the said Court shall proceed to fine the President, Managers and Company, &c., not exceeding two hundred dollars, &c. We think the Court below has erred in granting the company a jury trial, or in permitting a jury to be empannelled, for any purpose connected with the disposition of the proceedings before the Criminal Court in the matter of this inquisition. The phraseology of the statute (1812, ch. 78, sec. 26,) is somewhat misleading, and the use made of the word "convicted" is largely the cause of the trouble. "In common parlance, no doubt it (convicted) is taken to mean the verdict at the time of trial; but in strict legal sense it is used to denote the judgment of the Court." TINDAL, C. J., in *Burgess vs. Boetefeur,* 13 *L. J. M. C.,* 126, 8 *Scott N. R.,* 194, 7 *Man. & G.,* 504; *Smith vs. The Commonwealth,* 14 *Serg. & R.,* (*Pa.,*) 69; *Blaufus vs. People,* 69 *N. Y.,* 107. The word "conviction" is undoubtedly *verbum aequivocum,* but we think the meaning given to it by Chief Justice TINDAL is the one proper to be applied here. There were no facts to be found, or any issue to be joined or tried in the Criminal Court. The inquisition found all the requisite facts, and ascertained the condition of the road. Nothing remained for the Court to do, but to enter up judgment in accordance with the finding of the inquisition, unless there was interposed some appropriate motion, or objection to the regularity of the proceedings, or improper conduct on the part of the justice, or of the jurors. We think the Court was without authority to grant a jury trial to the company, and the verdict being against the road, the Court erroneously imposed a fine of fifty dollars. There ought to

have been no difficulty in imposing the fine, if the proceedings had been in accordance with the provisions of the statute, as the statute, in express terms, directs the manner in which it should be done.    The inquisition found the Baltimore and Harford Turnpike "to be," not in good and perfect order and repair, and that Richard C. Francis, the superintendent of the road, had not, for the space of ninety days, kept said road in repair.    In such a state of case, the statute provides that the Court shall impose a fine upon the superintendent of an amount not exceeding one hundred dollars, for *every* week, such place shall have been out of order and repair.    The President, Managers and Company were not liable to the imposition of a fine by the Court, until the company had, for the space of fifteen days from the laying of the fine on the superintendent, neglected to repair said place, which was out of repair.

It follows from what we have said, that the Court below was proceeding under the provisions of a special jurisdiction conferred by statute, which gives this Court no authority to review the judgment of the Court below, and therefore the appeal must be dismissed.

*Appeal dismissed, with costs.*

(Decided 7th December, 1892.)