HENRY J. SCHIRESON, PROSECUTOR-APPELLANT, v. STATE BOARD OF MEDICAL EXAMINERS OF NEW JERSEY AND EARL S. HALLINGER, RESPONDENTS-APPELLEES.

Submitted May 28, 1943—Decided September 24, 1943.

For the prosecutor-appellant, *Samuel P. Orlando.*

For the respondents-appellees, *David T. Wilentz,* Attorney-General of New Jersey (*Joseph A. Murphy,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. By this appeal prosecutor-appellant, a medical doctor, brings up a judgment of the Supreme Court under which an order of the State Board of Medical Examiners, revoking the appellant's license to practice medicine, was affirmed. The argument in support of a reversal of the judgment challenges the validity of the statute (*R. S.* 45:9–16, as amended by *Pamph. L.* 1939, *ch.* 115, *p.* 415, § 26) under which the action of the State Board of Medical Examiners was accomplished; disputes the legal sufficiency of the evidence before the Board to sustain its order, and claims that the Board's refusal to grant further adjournment of the hearing was arbitrary and unreasonable

under the circumstances. And for these reasons, it is said, the appellant was denied the due process of law guaranteed the individual by our federal constitution.

The statute, *supra,* provides:

"The board may refuse to grant or may suspend or revoke a license or the registration of a certificate or diploma to practice medicine and surgery filed in the office of any county clerk in this State under any act of the Legislature, upon proof to the satisfaction of the board that the holder of such license (a) has been adjudicated insane, or (b) habitually uses drugs or intoxicants, or (c) has practiced criminal abortion, or been convicted of the crime of criminal abortion, or has been convicted of crime involving moral turpitude, or (d) has advertised fraudulently, (e) becomes employed by any physician, surgeon, homeopath, eclectic, osteopath, chiropractor, or doctor who advertises fraudulently, or (f) shall have presented to the board any diploma, license or certificate that shall have been illegally obtained or shall have been signed or issued unlawfully or under fraudulent representations, or obtains or shall have obtained a license to practice in this State through fraud of any kind, or (g) has been guilty of employing unlicensed persons to perform work which, under this chapter (45:9–1, *et seq.*) can legally be done only by persons licensed to practice medicine in this State, or (h) has been convicted of a violation of any Federal or State law relating to narcotic drugs. Before any license, or registration of a certificate or diploma to practice medicine or surgery filed in the office of any county clerk of this State under any act of the Legislature, shall be suspended or revoked, except in the case of convictions of criminal abortions or convictions of a crime involving moral turpitude or conviction of violations of any Federal or State law relating to narcotic drugs, the accused person shall be furnished with a copy of the complaint and be given a hearing before said board in person or by attorney, and any person whose license shall be suspended or revoked in accordance with this section shall be deemed an unlicensed person during the period of such suspension or revocation, and as such shall be subject to the penalties hereinafter prescribed for persons who prac-

tice medicine and/or surgery, without first having obtained a license so to do. Any person whose license, or registration of a certificate or diploma to practice medicine and/or surgery filed in the office of any county clerk of this State under any act of the Legislature, shall be suspended or revoked under the authority of this chapter (45:9–1, *et seq.*) may, in the discretion of the board, be relicensed at any time to practice without an examination, or have his registration of a certificate or diploma, as aforesaid, reinstated, on application being made to the board." (*N. J. S. A.* 45:9–16.)

The facts in this case are that the appellant was indicted by a federal grand jury in the State of Pennsylvania on three charges—(1) unlawfully concealing assets from a trustee in bankruptcy; (2) making false oath in bankruptcy proceedings, and (3) perjury. He entered a plea of *nolo contendere* to the first two charges and non-vult to the last. Thereupon he was sentenced to prison. Thereafter the State Board of Medical Examiners, on the complaint of its secretary, sent written notice to the appellant, then in prison, that at a given time and place the Board would meet to consider the matter of the suspension or revocation of his license to practice medicine and surgery. The notice and complaint apprised the appellant of the basis of the disciplinary hearing before the Board, namely, his conviction of crimes involving moral turpitude, outlining them, and the prayer of the complaint was that the prosecutor's license be suspended or revoked. These papers were received by the appellant at the Lewisburg prison, in Pennsylvania, on or about January 23d, 1942. His one year prison sentence was started on September 29th, 1941. The Board's hearing was fixed for the 18th day of February, 1942, at Trenton, New Jersey. Counsel for the prosecutor obtained two adjournments, the first to March 18th, 1942, the second to April 14th of the same year. Further postponement until the prison sentence was finished was requested. The Board denied the application and its president announced "we will have to go on with the case." Thereupon certain pertinent docket entries of the proceedings on the indictment in the Federal District Court were received in evidence, together with a copy of the indictment, and an order entitled

"Judgment and Commitment" showing the imposition of a prison sentence as a basis for which the recital appeared that the "defendant Henry J. Schireson" had pleaded *nolo contendere* to the charges of the indictment. Thereupon the Board, by resolution, ordered that the appellant's license to practice medicine be revoked.

Adverting to the statute, *supra,* it is clear that the legislature ordained different standards or modes of procedure for the administration of this disciplinary section of the statute. Thus if a doctor had become insane or habitually used drugs or intoxicants or had practiced criminal abortion, manifestly such status or conduct became a matter of proof on the merits before the Board. But in cases where a doctor had been *convicted* of criminal abortion or of crime involving moral turpitude, &c., such licensee is not under the statute, *supra,* entitled to be "furnished with a copy of the complaint and given a hearing" before the Board. In the first class of delinquents the truth or falsity of the charge had to be determined by the Board as a fact issue. In the second the conviction itself of the designated crime is sufficient basis for the Board's disciplinary action and the truth or falsity of the charge upon which such conviction resulted has no place whatever in the Board's consideration.

The question therefore is whether the proceedings had in the Federal District Court, *i. e.,* plea of *nolo contendere* and sentence to prison, constitutes a "conviction" within the meaning of our statute, *supra.* That the crimes outlined in the indictment involved moral turpitude is not disputed. The Supreme Court determined that there had been such conviction within the intent of the statute and sustained the Board's order revoking the license.

"Conviction," says Blackstone, "may occur two ways: either by the person confessing the offense and pleading guilty, or by his being found so by the verdict of his country." *Jones' Ed. Book 4, ch. 27, p. 2601, § 410.* See, also, 18 *C. J. S., tit. "Conviction,"* 97, (*note* 86); 14 *Am. Juris* 759, § 8.

A conviction in ordinary legal language consists of a plea of "guilty" or verdict of guilty and it is immaterial whether

final judgment has been rendered thereon. *Bishop on Statutory Crimes,* § 348.

In the case of *Peacock* v. *Hudson Quarter Sessions,* 46 *N. J. L.* 112, the issue turned upon the construction to be given the Act of 1883, *Pamph. L., p.* 230 (thereafter repealed by chapter 238, *Pamph. L.* 1898, *p.* 930), a supplement to an Act regulating proceedings in criminal cases, wherein it was provided that where a plea of guilty had been entered to any indictment or accusation a writ of error should not stay the proceedings upon the judgment and sentence which the court has pronounced, it was stated that a plea of *nolo contendere* is an implied confession of the crime of which the defendant is charged and is equivalent to a plea of guilty so far as judgment and execution *in that case* are concerned. 1 *Burn's Just.* 388; 2 *Hawk. P. C.* 225. It was also pointed out that the difference between this implied confession and the express confession by plea of guilty was that after the latter, "Not guilty" might not be pleaded to an action of trespass for the same injury, whereas it might at any time be done after the former. 1 *Chitty Crim. Law* 293. The distinction is clear that a plea of guilty to a criminal indictment will not reserve for the wrongdoer the right to contest the issue in a civil action for the same wrong (1 *Bish. Crim. Pro.,* § 802; 1 *Wharton Amer. Crim. Law,* § 533; *Com.* v. *Horton,* 26 *Mass.* 206, 207; *Com.* v. *Tilton,* 49 *Id.* 232; *State* v. *Henson,* 66 *N. J. L.* 601, 608; compare *In re Smith,* 365 *Ill.* 11), while a plea of *nolo contendere* creates no such estoppel (*Cf. United States* v. *Norris,* 281 *U. S.* 619; 74 *L. Ed.* 1076) but is merely an implied admission of guilt for the purposes of the instant criminal prosecution. *Hudson* v. *United States,* 272 *U. S.* 451; 71 *L. Ed.* 347; *Cf.* 14 *Am. Jur.* 954, § 275; 22 *C. J. S.,* tit. *"Criminal Law,"* 658, § 425.

Applying these principles to the case before us, we think that it was error to hold that the appellant could be deprived of his license to practice medicine and surgery solely on the exhibits which were placed before the Board of Medical Examiners. The statute, whence the Board acquires jurisdiction to suspend or revoke a license, without a hearing, ordains that such delinquent shall have been "convicted" of

the crime and to hold that a commitment upon a *nolo contendere* plea is a conviction which may be used to satisfy the requirements of the statute, in a proceeding entirely collateral, is to accord to the plea of *nolo contendere* an effect which the cases and text-writers mentioned above do not support. Here there was no such conviction in the strict sense or in the ordinary legal sense as would estop the appellant from contesting the issue in a collateral proceeding. The statute, penal in character, must be construed strictly. The appellant, licensed to practice medicine under our law, had a status in which the law protects him until such time as he might be shown to be unfit to continue in that profession. Our statute ordains that under certain conditions and for specified malefactions that right may be revoked or suspended by the state. And this, of course, is on the theory that such right, a property right, is derived from the state or society generally, and society is entitled to be protected from practitioners found to be unfit.

The statute makes no provision for the case of one who pleads non-vult to an indictment for a crime involving moral turpitude. Perhaps it is *casus omissus.* If it is we may not supply the want. The distinction between a conviction of crime and the judgment and commitment that results from a plea *nolo contendere* is recognized in our law and the appellant is entitled to its benefit. The plea is not a matter of right, it raises no issue but is traditionally regarded as one by which the accused submits himself to the mercy of the court. The court is always free to refuse to accept such submission. To designate a *nolo contendere* as a plea seems to be a misnomer. It is rather an unwillingness to plead and present a defense which is essentially the function of a plea in a criminal cause. Our conclusion is that the record of the judgment and commitment of the appellant, following his plea of *nolo contendere* to the charges of the indictment, do not amount to a conviction of the designated crime within the contemplation of the statute, *supra,* and hence may not be used as such for the revocation of the appellant's license. Whether the appellant's license to practice medicine may be suspended or revoked under our statutory law by the State

Board of Medical Examiners after hearing on the merits of charges that he committed crime involving moral turpitude is a question which we expressly reserve.

The judgment of the Supreme Court is reversed.

*For affirmance*—BODINE, WELLS, DILL, JJ. 3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, HEHER, PERSKIE, PORTER, DEAR, RAFFERTY, HAGUE, THOMPSON, JJ. 10.