88 N.J. Super. 429 (1965)
212 A.2d 668
AMERICAN POLICYHOLDERS' INSURANCE COMPANY, A CORPORATION OF THE STATE OF MASSACHUSETTS, PLAINTIFF-APPELLANT,
v.
JOSEPH P. PORTALE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1965.
Decided July 20, 1965.
*432 Before Judges KILKENNY, GAULKIN and LEWIS.
Mrs. Sylvia B. Pressler argued the cause for appellant (Mr. J. Edward Bennett, attorney; Mr. Richard D. Bennett, of counsel).
Mr. Rolf G. Schudel argued the cause for respondent (Messrs. Darling & Jobes, attorneys).
The opinion of the court was delivered by LEWIS, J.A.D.
On May 3, 1962 plaintiff American Policyholders' Insurance Company, a preferred risk underwriter, issued its automobile liability policy to defendant Joseph P. Portale, who subsequently, on January 4, 1963, became involved in an automobile accident in which a pedestrian was killed. The fourth day of the following month, plaintiff tendered the insurance premiums that had been paid, gave notice that the policy was null and void ab initio, and requested its return for cancellation. Defendant refused to comply.
The proceedings under review were then instituted on February 18, 1963 by American for a rescission of the insurance contract, claiming that Portale had made false and misleading representations in his application for insurance which materially affected the risk assumed by it. A counterclaim was interposed for damages resulting from the attempted cancellation. The Chancery Division entered judgment dismissing the complaint, determined that American should assume coverage under its policy, and awarded damages to defendant on his counterclaim for expenses and legal fees incurred.
Plaintiff appeals contending: (1) an innocent material misrepresentation in an application for automobile liability *433 insurance constitutes grounds for rescission of the policy whose issuance was induced thereby; (2) the question in the application, "Has the applicant been convicted of a moving traffic violation?" is reasonably designed to elicit material information of convictions based on pleas of guilty, and is not, as a matter of law, ambiguous; and (3) defendant's alleged understanding of the phrase "convicted of a moving traffic violation" was so incredible as to prove that he in fact understood the meaning of the question and falsely gave a negative answer thereto.
Preliminarily, we note that plaintiff maintained at the trial that defendant had given four false answers in the pre-insurance questionnaire, specifically as to questions 8A (prior declination of insurance), 8B (business and commuter use), 8E (prior convictions) and 8F (prior accidents). The trial court found, after analyzing the proofs, that all of the questions were answered truthfully, and plaintiff states in its brief that it does not "directly challenge" the court's holdings with respect to questions 8A, B and F. We proceed now to focus attention upon the answer to 8E which gives rise to the subject matter of this appeal. The question reads:
"Statement of Convictions. Has the applicant or any other person named in Item D [not here relevant] been convicted of a moving traffic violation as a result of operating any private passenger type of automobile during the three year period ending three months prior to the effective date of the policy?"
The reply given was "No," when in fact the irrefutable evidence, and Portale does not contend otherwise, is that during the specified period he had been involved in a series of violations of the Motor Vehicle Traffic Laws.
A certified abstract of the defendant's operating record secured from the Division of Motor Vehicles, dated January 24, 1963, and admitted in evidence, reveals, in addition to four non-moving offenses (relating to registration and inspections), a violation on March 25, 1959 for careless driving, and a stop-sign passing violation on January 23, 1962. On *434 the latter two charges he paid fines of $15 and $5 respectively. They were paid by him to the violations clerk of the municipal court of Fairlawn, when and where he signed the reverse side of the summonses issued by the enforcing officials at the time of the violations. It is conceded that in neither case was there a trial and that he did not appear in court or before a judge.
Four of the defenses interposed by Portale are, in the circumstances of this case, ineffectual and can be disposed of summarily, viz.:
(1) The policy did not become noncancellable upon the occurrence of loss or damage as contemplated by N.J.S.A. 39:6-46 to 48. That statute has been held to be applicable only to situations where the insured has been required to file proof of financial responsibility under N.J.S.A. 39:6-23 et seq. See Merchants Ind., etc. v. Victory Iron Works, Inc., 80 N.J. Super. 7, 14 (App. Div. 1963), affirmed o.b. 42 N.J. 364 (1964); Buzzone v. Hartford Accident & Indemnity Co., 41 N.J. Super. 511, 517 (App. Div. 1956), affirmed 23 N.J. 447 (1957). Portale had not been required to supply such proof of responsibility.
(2) Laches is not here present. Plaintiff acted with reasonable diligence and dispatch. See West Jersey Title, &c., Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958); Citizens Casualty Co. of New York v. Zambrano Trucking Co., Inc., 141 N.J. Eq. 310, 312 (E. & A. 1948).
(3) Statements made by an insured which are unincorporated in an automobile liability insurance policy are not necessarily inadmissible as evidence in proceedings for an equitable rescission. Misrepresentations of fact, although aliunde the contract, may constitute a source of relief for an insurer, but as this court pointed out in Merchants Indem. Corp. of New York v. Eggleston, 68 N.J. Super. 235, 244 (App. Div. 1961), affirmed 37 N.J. 114 (1962):
"`Representations,' * * * whether contained in the policy itself or merely in the applicant's declarations preparatory to issuance *435 of the policy, will only invoke forfeiture of the insured's rights if they are untruthful, material to the particular risk assumed by the insurer, and actually and reasonably relied upon by the insurer in executing the contract."
The trial court found in favor of the plaintiff on the issues of materiality and reliance but not on the issue of untruthfulness.
(4) The insurance company's independent investigation prior to the issuing of its policy would not, without more, preclude a subsequent allegation that unbeknown to it the factual statements so investigated had been falsified. "The mere fact that an insurer makes an investigation does not absolve the applicant from speaking the truth nor lessen the right of the insurer to rely upon his statements," John Hancock, &c., Ins. Co. of Boston, Mass. v. Cronin, 139 N.J. Eq. 392, 398 (E. & A. 1947), unless, of course, the disclosures by the investigation "place upon the insurer the duty of further inquiry." Ibid. See Gallagher v. New England Mutual Life Ins. Co. of Boston, 19 N.J. 14, 21-22 (1955). We are not concerned in the instant case with any failure on the part of the insurer to have sought and obtained a violations report from the Motor Vehicle Division, as in State Farm Mut. Auto. Ins. Co. v. Wall, 87 N.J. Super. 543, 556 (Law Div. 1965), because we are satisfied from what is before us that plaintiff did, within the month following the issuance of its policy, request and obtain from that state agency a three-year "Driver Record Information" report on the insured, which communication apparently, by inadvertence or clerical mistake, erroneously indicated that defendant had "no record" of violations.
Merit, however, is perceived in defendant's contention that his negative answer, to the printed form inquiry in controversy, was not false within the fair, reasonable and lay interpretation which the insured applied to the posited question. We cannot subscribe to plaintiff's argument that the phrase "convicted of a moving traffic violation" in the context of the declaration under review is unambiguous as a matter of law.
*436 The substance of defendant's testimonial explanation was that to him "conviction" meant to be sentenced to jail or, at least, to appear in court before a judge and to be found guilty. The following excerpts from his testimony are illustrative of his declared understanding:
"Q. At that time what did you understand conviction to mean?
A. I understood a conviction as being almost put in jail.
THE COURT: And if you did not go to jail, you were not convicted as far as you were concerned?
THE WITNESS: That is correct, sir.
Q. Had you ever gone to court before a judge and had the judge say that you were guilty of a motor vehicle offense during this three year period?
A. No sir. * * *
THE COURT: Let's try it once more. When you pleaded guilty to the commission of these motor vehicle offenses, what did you understand you were doing when you appeared at the violation clerk's office?
THE WITNESS: I was paying a fine, sir."
On cross-examination
"Q. It is your opinion that when you go to a court and you pay a fine that is not a plea of guilty.
A. Paying the fine is pleading guilty, yes.
Q. Isn't that a conviction?
A. No, because a conviction is like going before the judge."
That a layman might readily misunderstand the technical meaning of the word "conviction" is not at all incredible when we consider the difficulties of lexicographers, law encyclopedists, legal text writers and jurists in finding and applying a precise unequivocal and uniform interpretation for the word.
Webster's New Twentieth Century Dictionary of the English Language (1953) furnishes this definition of "conviction": "The act of providing, finding or determining to be guilty of an offense; specifically, in law, the act of finding or the state of being found guilty of crime before any legal tribunal, as a jury." In Webster's New International Dictionary (2d ed. 1961), it is stated in this way: "Law. Act of convicting *437 a person, or state of being convicted, of a criminal offense; the proceeding of record by which a person is legally found guilty of any crime, esp. by a jury, and on which the judgment is based."
18 C.J.C., Conviction, p. 97 declares the term "conviction," as its composition (convinco, convictio) sufficiently indicates, to signify "the act of convicting or overthrowing one," and in criminal procedure "the word is of equivocal meaning, having both a popular, and a technical legal, signification * * *." For purposes of classification three meanings have been recognized: (1) general, (2) ordinary, and (3) technical. In its ordinary legal sense the term is used to designate "that particular stage of a criminal prosecution when, a plea of guilty is entered in open court, or a verdict of guilty is returned by a jury * * *." Ibid. "Conviction" and "sentence" are commonly used synonymously, although legally distinct. See 5 Anderson, Wharton's Criminal Law and Procedure, § 2176, p. 370 (1957).
The decisions in this State have treated the expression "conviction" as being applicable to a plea of guilty, accepted and entered by the court, as well as an end result of a trial by jury. See State v. Compton, 28 N.J. Super. 45, 48 (App. Div. 1953), where this court collected authorities for the proposition that a conviction may accrue two ways: either by the defendant's "confessing the offence and pleading guilty; or by his being found so by the verdict of his country."
In a divorce proceeding for adultery, the court in discussing the persuasive evidence of guilt upon which a decree may be awarded said: "Conviction means the confession of the accused in open court or the verdict rendered by the jury which ascertains and publishes the fact of guilt." Tucker v. Tucker, 101 N.J. Eq. 72, 73 (Ch. 1927). Note also State v. Whitaker, 7 N.J. Misc. 395, 146 A. 42 (C.P. 1929), and see Schireson v. State Board of Medical Examiners, 130 N.J.L. 570 (E. & A. 1943).
The following quotation from a sister-state court decision is noteworthy:
*438 "The word `convicted' is ambiguous; it is `verbum aequivocum.' Francis v. Weaver, 76 Md. 457, 25 A. 413, 415. The meaning of the word usually varies with the context of the statute in which it is used. See State v. DeBery [150 Me. 28], 103 A.2d 523, 524. In its technical legal sense, the word includes the status of being guilty of, and sentenced for, a criminal offense, whether that status is established after confession of guilt, by a guilty plea or after the decision of a tribunal upon an assertion of innocence. See State v. Exum, 3 W.W. Harr. 93, 130 A. 854. In common parlance, however, a person has been `convicted' when he has asserted his innocence and has been found guilty by jury or court. See Francis v. Weaver, supra; Commonwealth v. Minnich, 250 Pa. 363, 95 A. 565, 566, L.R.A. 1916B, 950; Commonwealth v. Gorham, 99 Mass. 420. In The American College Dictionary, the word `convict' is defined: `To prove or declare guilty of an offense, esp. after a legal trial.'" Martin v. State, 10 Terry 344, 49 Del. 344, 116 A.2d 685, 686 (Super. Ct. 1955)
It was held in Texas Dept. of Public Safety v. Williams, 356 S.W.2d 848, 849 (Tex. Civ. App. 1962), that a payment of fine by mail did not constitute a "conviction" within the statute authorizing suspension of license of an habitual violator of traffic laws by reason of four convictions within a 12-month period.
Judicial cognizance of the flexible and indefinitive use of the term "conviction" was exemplified in a recent New York case where a suspended sentence imposed upon a real estate broker for perjury was held not to constitute a conviction requiring revocation of his broker's license. In re O'Neill, 33 U.S.L. Week 2632, 2633 (Sup. Ct. 1965).
In a technical sense it is beyond doubt, within the meaning of the Motor Vehicle Act of this State, that defendant had a record of two convictions during a preceding period of three years. N.J.S. 2A:58-5 expressly provides that payment of a money penalty for a violation under any statute "shall have the effect of a judgment of conviction for the violation complained of in establishing the status of the defendant as a second or subsequent violator in any subsequent proceeding."
But, in the case sub judice, there is nothing in the record to persuasively suggest that the insurance company, *439 when using the word "conviction" in its preinsurance questionnaire, made known to the prospective insured, or that he knew or understood, that the term thus used was to solicit an answer to its technical connotation rather than to its meaning in a general or popular sense.
It has been held that, in an action by an insurer wherein rescission of a policy was demanded on the grounds of material misrepresentation, if the terms of the questions are ambiguous they will be construed in the insured's favor so as to establish the truthfulness of his answers. Shapiro v. Metropolitan Life Ins. Co., 114 N.J. Eq. 378, 381-382 (E. & A. 1933). As stated in Merchants Indem. Corp. of New York v. Eggleston, supra:
"While insurance carriers may, within the confines of public policy, write their contracts in any manner they desire, the language of their instruments will be construed strictly and will, in cases of ambiguity, be held to favor the insured." (68 N.J. Super., at p. 248)
It is established beyond the need for citation of authority, as this court stated in Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Falciani, 87 N.J. Super. 157, 167 (App. Div. 1965), that "ambiguities in a policy are to be construed against the company, and that construction should be adopted which gives the insured and those injured claiming through him the widest possible coverage." Note also the rationale and pertinent language enunciated in Imperial Casualty & Indemnity Co. v. Relder, 308 F.2d 761 (8 Cir. 1962), which was discussed and quoted at length in the Falciani case, 87 N.J. Super., at pp. 162-163.
Moreover, in evaluating a claim of the insured, consideration should be given as to whether alternative or more exact and nontechnical language, if used, would have put the matter beyond reasonable question. See Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961). An inquiry by plaintiff whether Portale had ever been charged with a motor vehicle violation, or whether he had a traffic violation *440 record, or the like, might well have developed a pertinent responsive disclosure rather than a negative reply.
The determinative issue is whether the words "convictions" and "convicted" were so ambiguous, in the context used and within the common understanding of that term, as reasonably to support a construction which would exclude traffic violation fines paid directly to a municipal court violations bureau without a hearing, trial or appearance before a magistrate or judge. Misrepresentation has not been proved. We are satisfied that defendant's answer to question 8E was not a deliberate misstatement in answer to the question as phrased in the insurer's printed form.
In conclusion we note, although not raised as an issue on appeal, that the only defendant in this civil action is the insured. If plaintiff were entitled to judgment, it would not be binding upon interested third parties not joined in the proceedings. As pointed out by our Supreme Court, "upon the happening of an accident the injured third party acquires an interest in the policy that cannot be foreclosed by litigation or agreement between insurer and insured alone." In re Estate of Gardinier, 40 N.J. 261, 265 (1963). Accord, Finley v. Factory, etc., Ins. Co. of America, 38 N.J. Super. 390, 395 (Law Div. 1955).
Judgment affirmed.