92 N.J. Super. 92 (1966)
222 A.2d 282
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ETC., PLAINTIFF-APPELLANT,
v.
LAWRENCE WALL, ET AL., DEFENDANTS-RESPONDENTS.
RALPH P. PHILLIPS, ET AL., PLAINTIFFS-RESPONDENTS,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANT-APPELLANT, AND LAWRENCE WALL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1966.
Decided July 5, 1966.
*94 Before Judges GAULKIN, LABRECQUE and BROWN.
Mr. Nicholas R. Rapuano argued the cause for appellant, State Farm Mutual Automobile Insurance Company (Messrs. Gelman and Gelman, attorneys; Mr. Ervan F. Kushner, of counsel).
Mr. H. Curtis Meanor argued the cause for Ralph P. Phillips et al. and Lawrence Wall (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys for Ralph P. Phillips et al; Messrs Slingland, Bernstein & van Hartogh, attorneys for Lawrence Wall).
GAULKIN, S.J.A.D.
State Farm brought an action against its assured, Lawrence Wall, for rescission of an automobile liability insurance policy because of Wall's allegedly false and fraudulent misrepresentations. Phillips, Simmons and Washington were injured in an accident for which Wall is allegedly liable. They brought a declaratory judgment action against State Farm and Wall to determine their rights in the afore-mentioned policy. The two actions were consolidated for trial. The trial court denied rescission and held that the injured parties were entitled to the coverage of Wall's policy.
The facts are fully stated in the trial court's comprehensive opinion, 87 N.J. Super. 543 (Law Div. 1965). For the purposes of this opinion it is sufficient to say that State Farm's agent, Voelkner, solicited Wall's insurance business. Wall agreed to insure with State Farm when his existing policy expired. On March 3, 1962 Voelkner went to Wall's home and asked him questions contained in two application blanks, one for a Chevrolet truck and the other for a passenger car owned by Wall. He wrote in the answers as Wall gave them to him, and Wall signed the applications.
We quote from the trial court's opinion:
*95 "Among the questions on each application were the following:
(a) `(6) Has any insurer cancelled or refused to issue or renew, or given notice that it intends to cancel or refuse automobile insurance or any other insurance similar to that applied for, to the applicant or any member of his household within the past three years?'
(b) `(7) Has license to drive or registration been suspended, revoked or refused for the applicant or any member of his household within the past five years?'
(c) `Dates of accidents  unless none give details.'
(d) `Driver citations last 3 years.'
The answers appearing on the application to each of these questions is `No' or `None,' except that the application relating to the Chevrolet pickup truck refers to an accident of February 13, 1962, in which the truck had skidded into a telephone pole, causing damage to the truck's headlight of `under $175' which Wall was `in the process of getting repaired.'
The `Declarations' in the State Farm policies contain similar representations, viz: `No insurer has cancelled automobile insurance issued to the named insured or any member of his household within the past three years,' and `no license to drive or registration has been suspended, revoked or refused for the named insured or any member of his household within the past five years.' The acceptance of the policies by Wall without protest or correction constituted an adoption of these representations. Citizens Casualty Co. [of New York] v. Zambrano Trucking Co., Inc., 140 N.J. Eq. 378 (Ch. 1947), affirmed 141 N.J. Eq. 310 (E. & A. 1948); cf. Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 121 (1962); Heake v. Atlantic Casualty Ins. Co., 15 N.J. 475 (1954).
The answers which denied that any insurance company had cancelled or refused to issue automobile insurance were true. But the other answers were not true. A `Certified Abstract of Operating Record' of Lawrence Wall, dated October 10, 1962, obtained by State Farm from the New Jersey Division of Motor Vehicles reveals  and these are the misrepresentations on which State Farm bases its claimed right of rescission  that (1) on June 21, 1961 Wall had been convicted in the Wayne Municipal Court of speeding, fined $25 and had his license revoked for one month; (2) on August 19, 1961 he had been involved in an accident, and for his failure to deposit security in connection with that accident had had his driving and registration privileges suspended from November 29, 1961 until December 8, 1961, when they were restored, and (3) on February 6, 1962 he was fined $15 in the Wayne Municipal Court for careless driving (Wall testified that this last involved the accident in which his truck had skidded into the telephone pole)." (at pp. 550-551).
State Farm ordered an investigation of the proposed risk by Service Review, Inc., a firm which makes confidential investigations for insurance companies. In ordering the *96 investigation, State Farm did not request a "Certified Abstract of Operating Record" (hereinafter MVR), although Service Review could have obtained this information from the public records in Trenton for $1. N.J.S.A. 39:6-42. If an MVR had been ordered, it would have revealed Wall's record.
Because Service Review's report showed Wall was single, State Farm caused a second investigation to be made "to ascertain what `use Wall made of his spare time,' a practice which [State Farm] `generally' followed in case of applicants who were single." (at p. 553) However, once again an MVR was not requested. Thereafter State Farm issued the policies applied for, one of which covered the passenger car to the extent of $25,000 per person and $50,000 for each occurrence, and $5,000 property damage, and for collision damage and medical payments.
On August 23, 1962 Wall, in attempting to pass a truck on Route 23 in Wayne, collided head-on with an automobile containing plaintiffs Phillips, Simmons and Washington. Both cars were total losses, and the three plaintiffs suffered severe injuries. State Farm honored Wall's claim of $2,550.11 for his collision loss and $19 for his medical expenses. However, it received $535 as the salvage value of the car, making the net cost of the payment to Wall as a result of this loss $2,034.11.
During State Farm's investigation of the accident its investigator, Palladino, learned that Wall had had "considerable beers" prior to the collision. State Farm claims that this led it to check on Wall's driving record. Upon learning of this record State Farm returned to Wall the premium he had paid and informed him that it regarded the policy as void ab initio because of his fraud and misrepresentation.
Officers of State Farm testified that while many insurance companies obtain MVRs on all risks as a matter of course, State Farm's practice is to rely on the representations of the assured. They also stated that had they known of Wall's record they never would have agreed to insure him.

*97 I.
The trial court found "the evidence * * * insufficient to relieve Wall of the representations contained in the writings which he signed and in the policies which he accepted," and that the misrepresentations were cause for cancellation if State Farm did "in fact rely on the truth of the representations in issuing the policy * * *." (at p. 552). With this we agree. However, the court found there was no such reliance. With this conclusion we are compelled to disagree.
The trial court rejected Wall's argument that State Farm was precluded from relying upon the misrepresentations because it had made its own investigation, and his alternative contention that the alleged reliance was unreasonable. But it held that it did not believe the testimony of State Farm's officers that the company relied on the representations. It reasoned thus:
"State Farm, which had reached out to obtain the insurance business which Wall had theretofore given to another company, is not naive or uninformed. It is an automobile insurance company fully cognizant of the law of insurance, and familiar with what driving records are available in the Division of Motor Vehicles and the manner and nominal cost involved in obtaining an abstract thereof. Yet, in ordering and obtaining from a private investigating agency a detailed report about Wall, his activities and his automobile, it deliberately and purposely refrained from authorizing the expenditure of an additional $1 for a Division of Motor Vehicle abstract of Wall's driving record. Why, if in fact it was concerned with the truth as to Wall's driving record? Other representations in the application were made the subject of part of the investigation  even those whose verification could not be obtained as simply as could a verification of the driving record.
The inference is compelling that State Farm did not then want to know, nor was it concerned with, whether or not Wall's representations as to his driving record were true, preferring rather to be in a position in which at some later date, if it served its interest to do so, it could seek rescission of the policy if the representations were untrue.
This is not reliance upon the truth of the representations; it is reliance on the expectation that relief will be afforded if the representations are untrue. As such, it is not sufficient to warrant rescission, just as it would not be sufficient reliance to warrant recovery *98 of damages in an action for fraud and deceit. 3 Restatement, Torts, § 548 (1938). As the Restatement phrases it:
`The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity.'" (at pp. 556-7).
We are aware of the respect we owe to a trial judge's findings of fact, and to his appraisal of the credibility of the witnesses. However, here the facts are not in substantial dispute  only the conclusions to be drawn from them  and in that area we have far greater latitude to come to our own conclusions. The testimony of the officers of State Farm was not improbable. Beyond that, their testimony was supported by the fact that State Farm did pay out $2,550.11, at a net cost of over $2,000, without first checking the truth of Wall's representations as to his record. So supported, we find no adequate reason to believe that State Farm did not rely upon the representations, but lay in wait "to be in a position in which at some later date, if it served its interest to do so, it could seek rescission of the policy if the representations were untrue."
We hold, therefore, that as to Wall the policy was void; he was entitled to no benefits thereunder; State Farm paid out the $2,550.11 with excusable ignorance of the facts; and it is entitled to recover $2,034.11 from Wall. However, for the reasons stated hereafter, we hold that State Farm is liable to the plaintiffs who were injured in the automobile accident.

II.
Wall was convicted of speeding on May 30, 1961, was fined $25, and his license was revoked for one month pursuant to N.J.S.A. 39:5-30. As a result, the provisions of the "Motor Vehicle Security-Responsibility Law," L. 1952, c. 173, N.J.S.A. 39:6-23 et seq., became applicable to him. N.J.S.A. 39:6-31 (e) provides:
"The director shall require proof of financial responsibility to satisfy any claim for damages, by reason of bodily injury to, or the *99 death of, any 1 person of at least $10,000.00, or by reason of bodily injury to, or the death of, more than 1 person on account of any such accident, of at least $20,000.00, and for damage to property of at least $5,000.00, from any person whose license has been suspended or revoked because of a conviction or a forfeiture of any bail, for the violation of any of the following provisions of law:

* * * * * * * *
(e) Such other violations as constitute cause for suspension or revocation of licenses in this State, except in cases where the circumstances, in the judgment of the director, are such that this requirement should be waived;

* * * * * * * *
Whenever the director shall require proof of financial responsibility from the owner of any motor vehicle, he shall require proof in the amounts herein specified for each vehicle owned or registered by such person. (Emphasis ours)
State Farm issued its policy on July 11, 1962, a date subsequent to the suspension of Wall's license. The policy contained a clause entitled "Financial Responsibility Laws" which provided:
"When certified as proof of future financial responsibility under any motor vehicle financial responsibility law and while such proof is required during the policy period, this policy shall comply with such law if applicable, to the extent of the coverage and limits required thereby; but not in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."
N.J.S.A. 39:6-40 provides in part:
"Such proof of financial responsibility shall be furnished as shall be satisfactory to the director.
The proof may be evidence of the insuring of the person against public liability and property damage in the foregoing amounts in the form of a certificate signed by a duly licensed agent of the company issuing the motor vehicle liability policy, * * *."
The Director made no demand upon Wall for such proof, and neither State Farm nor any of its agents made any such certification.
*100 Plaintiffs Phillips, Washington and Simmons contend that irrespective of the fact that the Director did not require proof of financial responsibility from Wall, and State Farm never certified to that effect in accordance with section 40, the policy issued, in the circumstances, is within the noncancellable provisions of N.J.S.A. 39:6-40 and 48 by virtue of the so-called "Steliga rule," Steliga v. Metropolitan Casualty Ins. Co., 113 N.J.L. 101 (Sup. Ct. 1934), affirmed o.b., 114 N.J.L. 156 (E. & A. 1935). We agree.
Steliga held that if an assured was in the class of those who could have been called upon by the Director to furnish proof of financial responsibility, any policy subsequently issued to him was deemed to be in conformance with the act, irrespective of the fact that the Director never in fact demanded the requisite proof. This rule arose under the former Financial Responsibility Act, R.S. 39:6-1 to 22, which has since been repealed. L. 1952, c. 173, § 34. Many cases subsequent to Steliga have adhered to and reinforced the rule. See United States Casualty Co. v. Timmerman, 118 N.J. Eq. 563, 567 (Ch. 1935); Continental Casualty Co. v. Lanzisero, 119 N.J. Eq. 166, 168 (E. & A. 1935); Woloshin v. Century Indem. Co., 116 N.J.L. 577, 579 (Sup. Ct. 1936); Ambrose v. Indemnity Ins. Co., 120 N.J.L. 248 (E. & A. 1938); Farm Bureau Mutual Auto. Ins. Co. v. Georgiana, 14 N.J. Super. 459, 466 (Ch. Div. 1951); Atlantic Casualty Ins. Co. v. Bingham, 10 N.J. 460, 465 (1952); Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300, 309 (1956); Buzzone v. Hartford Accident & Indem. Co., 23 N.J. 447, 455 (1957).
However, State Farm contends that the repeal of the old act and the passage of the new sounded the death knell of the Steliga rule, citing Merchants Indem. Corp. v. Victory Iron Works, Inc., 80 N.J. Super. 7 (App. Div. 1963), affirmed o.b., 42 N.J. 364 (1964), and American Policyholders' Ins. Co. v. Portale, 88 N.J. Super. 429 (App. Div. 1965). But an examination of these cases and an investigation of the *101 relevant statutes, comparing the old with the new, reveal that the rationale of Steliga governs the case at bar.
Under the old law the Director  then "Commissioner"  was required to demand proof of financial responsibility under any one of seven circumstances enumerated in R.S. 39:6-1. The seventh of these, subsection (g), provided that such proof was required:
"In the event that any person, while operating a motor vehicle, has been concerned in a motor vehicle accident resulting in the death of or injury to a person, or damage to property to the extent of at least one hundred dollars * * * except where the person, in the commissioner's opinion, is not at fault for causing accident."
When the law was repealed in 1952, subsections (a) through (f) were re-enacted into N.J.S.A. 39:6-31 in substantially the same language as the old law. Only subsection (g) was effaced. In lieu of (g), N.J.S.A. 39:6-25 was substituted, which is the security for past accidents feature of the act. Thus, we held in Victory Iron Works that, under the new law, "the basis for the Steliga rule no longer exists" (80 N.J. Super., at p. 14) for cases within former subsection (g). However, we made it clear in that case that we were speaking only of such cases. For example, we said (at pp. 11-12): "N.J.S.A. 39:6-31 (a) to (f) [replacing R.S. 39:6-1(a) to (f)] requires the director to demand proof of financial responsibility to satisfy claims for future damages from those guilty of enumerated crimes or offenses. If Edson fell within these provisions, he would have been required to file proof of financial responsibility, or comply with N.J.S.A. 39:6-33; but it is not suggested that he did come within N.J.S.A. 39:6-31." And, after explaining why the Steliga rule no longer applied to one "whose only dereliction is that he has been involved in an accident," we stressed (at p. 14) that "As we have mentioned above, there are, of course, other sections of the present act which do require the filing of proof of financial responsibility, but they all involve the presence of elements beyond the mere happening of an accident."
*102 It is not clear from the opinion in American Policyholders Insurance Co. v. Portale, supra, whether Portale's motor vehicle law violations brought him within N.J.S.A. 39:6-31. Be that as it may, the reasons for the application of the Steliga rule argued here were not raised in Portale, probably because the latter case was against the named insured for cancellation of the policy, and the injured claimant was not joined as a party defendant. Only the injured claimant, and not Portale, could claim the benefit of the Steliga rule. The Portale policy doubtless provided, as does the policy at bar, that the insured was obliged to reimburse the company for any payment made by the company which it would not have been obliged to make except for the operation of a financial responsibility law. Hence, had the company prevailed in Portale (which it did not) it would have been entitled to a declaration that it was entitled to such reimbursement from the insured, but no more, since the injured claimant was not a party. If Portale came within N.J.S.A. 39:6-31, the company would have remained liable to the injured party.
In any event, if any portion of the language in Portale is inconsistent with this opinion, it is overruled.
It is true that Steliga and all the subsequent cases applying its rule were subsection (g) cases. Thus, it might be contended that the rule was limited to that subsection and, with its repeal, the basis for the rule no longer existed. However, the rationale of the rule is not so circumscribed. In United States Casualty Co. v. Timmerman, 118 N.J. Eq. 563 (Ch. 1935), Vice-Chancellor Bigelow stated:
"Its purpose is to forbid the use of the roads to certain persons, unless they are able to respond in damages in case they cause injury to others. The beneficiaries of the statute and of the policy provisions required thereby, are the public  those who may be injured in motor accidents." (at p. 569)
See also Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300, 309-10 (1956). We cannot conceive that an individual involved in any of the six stated offenses in N.J.S.A. 39:6-31 *103 presents a lesser hazard to members of the public than one who was involved in an accident which caused damage in excess of $100 under former R.S. 39:6-1(g). As Justice Wachenfeld stated in Atlantic Casualty Ins. Co. v. Bingham, 10 N.J. 460 (1952), with reference to the new statute:
"* * * we cannot conceive it to be the legislative design to infringe upon the public protection it had already wisely established. To blithely resolve to the contrary in construing the language here employed would not be justified or warranted." (at p. 467)
Thus we hold that the vitality of the Steliga rule subsists and applies to all persons who could be required to furnish proof of financial responsibility under N.J.S.A. 39:6-31, irrespective of the fact that the director has not required such proof to be furnished. Since Wall was of that class, the policy issued him by State Farm was rendered noncancellable as against the injured claimants by virtue of N.J.S.A. 39:6-40 and 48.
State Farm contends, however, that its policy provides that it shall be in conformity with financial responsibility laws only if it is so certified. Since Wall's policy was never certified, it argues that it cannot be held to have issued a noncancellable policy.
Laying aside the ambiguity of the policy as to who may so certify, we hold that the policy is noncancellable even without certification.
That this is the law was demonstrated by Chief Justice (then Judge) Weintraub in Buzzone v. Hartford Accident & Indem. Co., 41 N.J. Super. 511, 518 (App. Div. 1956), affirmed 23 N.J. 447 (1957). He stated that Bingham and Saffore establish that "our rule rests upon the statute itself." It does not require "a voluntary assumption of liability independent of the compulsion of the statute." Thus, liability is not predicated upon voluntary contractual undertaking "under principles of common law." "Our statute does not expressly restrict its effect to policies thus certified, and, of course, our cases necessarily mean that a restriction to that *104 effect by implication was not found." (41 N.J. Super., at p. 520) Indeed, the company is bound as against the injured claimant even if the insured concealed his obligation to comply with the financial responsibility law. Atlantic Casualty Ins. Co. v. Bingham, supra. Thus, since the benefit bestowed on innocent third parties emanates from the statute, the absence of a voluntary certification does not operate to deprive these parties of their rights under the Wall policy.
Accordingly we hold that by virtue of the Steliga rule Wall's policy, to the extent of the statutory limits of $10,000 per person, $20,000 per occurrence, and $5,000 property damage (N.J.S.A. 39:6-31), may not be cancelled by State Farm as against plaintiffs Phillips, Simmons and Washington, irrespective of the absence of certification and regardless of any fraudulent misrepresentations by Wall. See Annotation, 83 A.L.R.2d 1104, 1105-06 (1962). However, Wall will be obliged to reimburse State Farm, pursuant to the express terms of the policy, for any sums it may be required to pay to the injured parties, as well as for the $2,034.11 it paid Wall for his collision loss and medical expense.
The judgment is modified accordingly, and as so modified it is affirmed. The case is remanded to the trial court for the entry of an appropriate judgment.