# HUNTER *v.* STATE
[Nos. 19-20, October Term, 1949.]

*Decided November 11, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Joseph C. Cissel* and *Joseph B. Simpson, Jr.*, with whom were *Vivian V. Simpson* and *Simpson & Simpson* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General*, with whom were *Hall Hammond, Attorney General*, and *Walter W. Dawson, State's Attorney for Montgomery County* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

These two cases involve criminal prosecutions of the appellant in the circuit court for Montgomery County. In each case there was a jury trial, the appellant was convicted and took an appeal. The cases were heard together here by consent, and while the points made differed, there is a connection between the two which will appear in the recital of facts.

In No. 19, the appellant was tried on a warrant charging that on the third day of November, 1948, he kept and maintained a gaming table, namely, a pinball machine, at Lee and Eddie's Tavern in Montgomery County, for the purpose of gambling. The charge was laid under Section 288 of Article 27 of the Annotated Code. It is shown in the testimony in the case that Lee and Eddie's Tavern was located in Silver Spring, Maryland, and that the appellant, Robert Lee Hunter and Edward J. Maloy were partners in the beer and food business there. The particular offense charged, according to the bill of particulars and the evidence, was that on November 3, 1948, the sum of 60 cents for 12 free games was paid by Joseph Farrell, the bartender, to Officer Popcke who had been playing the pinball machine. Precisely the same charge for the exact offense was made against the other partner, Maloy, and he was tried on this charge the day before No. 19 was tried.

The first contention made by the appellant is that although he filed his demand for a bill of particulars on February 25, 1949, the State failed to file one until March 10, 1949, the date on which the charge was tried, and that appellant did not have time to prepare his defense. He moved for a continuance. The trial court denied this motion, stating for the purpose of the record that counsel for the appellant had read the information contained in the applications for the warrants making the charge, that counsel had been in the courtroom the last two days when two cases were tried, the first against the partner, Maloy, and the other against the bartender, Joseph Farrell, the latter having. been represented by the same counsel as the one representing appellant. This counsel did not represent Maloy. The Court considered that, as the charges were exactly the same in the three cases, counsel knew what he had to meet and had heard the evidence. After the motion for a continuance was overruled, another motion was made to set the trial for a later date, and that motion also was overruled.

There is no question that the granting or refusal of a motion for a continuance or for fixing the date for a trial rests within the sound discretion of the trial court, and will not be disturbed except for arbitrary action or clear abuse of judicial discretion. *Lee v. State,* 164 Md. 550, 165 A. 614. The bill of particulars is, of course, not a part of the indictment. It is intended to guard against surprise by limiting the scope of proof. *Berger v. State,* 179 Md. 410, 20 A. 2d 146. Under the circumstances, as disclosed by the record in this case, the appellant was not surprised and, therefore, we find no abuse of discretion in the ruling of the trial court in refusing his motions for a continuance and for a later date.

The second point raised is that Officer Popcke testified that on October 27, 1948, he was in the tavern, a customer developed a score of 43 free games on the pinball machine, and was paid $2.00 by the appellant. On October 28th a young lady ran up a score of 83 free games and the appellant paid her $4. On October 5, 1948,

the officer played the pinball machine himself. At the conclusion of his play he had 20 free games, and Farrell, the bartender, paid him $1. On the 19th of October, 1948, the officer testified he saw Maloy pay $1 to a customer for 20 free games. This was in the evening. At lunch time on the same day he went to the tavern and witnessed a pay-off by the appellant. On the 26th of October, 1948, a customer ran up a score of 43 free games, and appellant paid him $2. On the 30th of October, Maloy was present, a customer made 43 free games and Maloy paid the customer $2. At the time these pay-offs were made a notation would be made on a pad by the cash register. The officer, however, did not know what this notation was. On the first of November, 1948, the officer saw a customer run up a score of 23 free games. He was paid off by the appellant. Later he noticed a customer had run up a score of 100 free games, appellant went over and examined the machine, and then went to the cash register and brought out a $5 bill which he gave to the customer. The appellant objected to the evidence of these prior transactions on the ground that they were not similar to the one charged. We are unable to see the force of this contention. They show that for a period of nearly a month prior to the date on which the alleged offense was committed, similar things had been done in the tavern run by the appellant and his partner, and they had been done by the appellant, by the bartender and by the appellant's partner. We think this testimony tends to show by reasonable inference that the defendant was guilty of the offense for which he was being tried, which was the maintenance of a gaming table. *Berger v. State,* 179 Md. 410, 20 A. 2d 146. In a discussion of this question in the recent case of *Purviance v. State,* 185 Md. 189, at page 196, 44 A. 2d 474, at page 477, it is stated "It is equally well established that when proof shows connection between the different transactions as raises a fair inference of a common motive in each, evidence of other crimes is admissible. * * * Such evidence is not admitted because

it is proof of the other crime, but because of its relevance to the charge on trial.  *  *  *  it is firmly established that evidence of acts may be admitted to show motive, intent, absence of mistake or accident, a common scheme, or identity embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other." In the case of *King v. State,* 190 Md. 361, 58 A. 2d 663, where the charge was similar to that in the case before us, evidence was admitted that two days prior to the date charged in the indictment, one of the slot machines was operated by a witness and the court said that if the machine was kept for gambling on May 29th when they were actually operated for gambling, this was evidence that they were there on May 31st, the date charged on the indictment for the same purpose.

The third contention made by appellant is that when his copartner, Maloy, was testifying for him, he said that the only time there was a pay-off on pinball machines was when the machine would jam and go out of order, and he denied that he or the appellant or any of his employees ever paid anybody for free games except when the machine was jammed or broken. He was then asked "I believe you were acquitted on this same charge day before yesterday." The State objected, and the court declined to permit him to answer, and told the jury to pay no attention to that question; that they were to determine one issue and were to determine that issue as they found from the evidence themselves. Appellant's contention is that it was necessary to show that this witness had been acquitted in order that the jury might find that he had no personal interest in appellant's case. In other words, having been acquitted, he was a disinterested witness. Further, as several of the instances above related had been shown by Officer Popcke to consist of pay-offs by the witness, the appellant contends that he was a discredited witness to start with, unless appellant was permitted to show that he was acquitted of the charge against him. It is stated in *Wharton, Crim-*

*inal Evidence,* pages 1216-17, "When a defendant is being tried for an offense, the acquittal or conviction, by plea or verdict, of another, who was separately charged with the same offense, is inadmissible on the trial of the defendant." The Supreme Court of Pennsylvania, in a case cited by appellant, *Commonwealth v. Quaranta,* 295 Pa. 264, 145 A. 89, 91, limited the possibility of admitting such testimony to the first point made by appellant, namely, the credibility of the witness, and held a general proffer erroneous. In the case before us the proffer was general and no attempt was made to limit it. The result of such a general proffer is well stated by the Pennsylvania Court in the following words "* * * To have admitted the evidence generally would have permitted defendant's counsel a wide latitude in his closing remarks. He could urge with much assurance that, another jury having cleared these two men of any complicity in the murder, this jury should accept that verdict as conclusive of defendant's innocence." The appellant could not have been permitted to have such evidence as this admitted, so that he could argue to the jury, that since another jury had acquitted his partner, he should also be acquitted. Without passing upon the question whether such evidence would be admissible had he limited it to the purpose of showing that the witness was disinterested, we think it clear beyond any question that, as asked, the question was inadmissible, and the trial court was correct in refusing to permit it to be answered and in making his statement about it to the jury.

Since we find no error in any of the rulings of the trial court in No. 19, the judgment and sentence in that case will be affirmed.

When we come to case No. 20, we find that appellant was tried on a warrant for violating Article 27, Section 291 of the Annotated Code of Maryland, by accepting a bet on a running race of horses on the fifth day of November, 1948. Two questions are raised in this case. The first is whether the alleged improper admission of

testimony regarding another type of gambling can be cured by the Court's instructions to the jury, rather than by granting a mistrial. The facts are that Officer Popcke was testifying about a conversation he had at the tavern about placing bets on race horses. He then said "Later, after possibly five minutes passed, Mr. Hunter came over to me and proceeded to mention about when he used to be in the gambling business relative to numbers." The Court stopped him, and appellant moved for a mistrial. The Court said "Ladies and gentlemen of the jury, you will disregard entirely any reference this witness has made to any occasion when the defendant is alleged to have said he was in the numbers business; we are not trying him on that business, and that has nothing to do with this case. The motion will be overruled. I don't see how I can make that any more specific." It is not possible for a trial court always to prevent improper remarks being made by a witness in the course of his testimony when there is no reason to suppose that such remarks are about to be made in an answer to a question which does not indicate they are called for. In any event the court took prompt action to tell the jury not to consider it. If a mistrial has to be declared, whenever something creeps into a trial which should not be there, there might readily result interminable delay in the prosecution of offenders. We cannot assume that a jury will disregard instructions promptly and immediately given by the court. It does not seem probable that the jury in this case was misled by the statement of the officer coupled with the instruction of the court. See *Prince George's County Com'rs. v. Timmons*, 150 Md. 511, 133 A. 322. We think the action of the trial court was all that was necessary under the circumstances.

The second contention made in No. 20 by appellant arises from the fact that when the appellant was asked by the State on cross examination "Have you ever been convicted of a crime?", he answered "Not until last week." Then the further question was asked "You were convicted last week of running a gaming table, were you

not?" Over objection then made, he was allowed to answer "Yes sir, I was convicted that week; I believe it was running a gaming table." The appellant contends that such a conviction did not affect the credibility of the appellant and was damaging to him, and further that he had not actually been convicted because he had not been sentenced. The general rule as to the admission of evidence of prior convictions, in order to impeach the veracity of a witness was laid down by Chief Judge Bond in the case of *Nelson v. Seiler*, 154 Md. 63, 139 A. 564. In that case, which was a damage suit, the defendant was asked whether he had been convicted before a magistrate for exceeding the legal speed limit, and also whether he had been twice found guilty of driving without having his license in his possession. The Court said that none of these questions could bring out facts affecting the credibility of the witness, and in a discussion of the matter said that while the evidence need not be restricted to infamous crimes or those involving moral turpitude, the convictions should be of infringements of the law that may have some tendency to impeach credibility. It was stated that no rigid classification seems possible, but the principle to be followed is that the trial court must exercise discretion and that its decision will not be interfered with on appeal, except when the evidence is so clearly irrelevant that its admission could not be said to be within the discretion lodged with the trial court. We cannot hold that the trial court abused its discretion in permitting the question to be asked. There is also merit in the State's contention that the proper question was not objected to, and that the damage had already been done when the question was asked to which objection was made. When the appellant was asked the broad question whether he had ever been convicted of a crime, he and his counsel must have known that what the State was going to bring out was his conviction in Case No. 19 which had preceded the trial of No. 20, and that was the time for an objection to be made.

The appellant also contends that there had been no prior conviction, because in Case No. 19 no sentence had been imposed and that the word "conviction" includes both verdict and sentence. Investigation into this question discloses a divergence of opinion throughout the country on the subject. In this State, there is one case which discusses the meaning of the word, *Francis v. Weaver*, 76 Md. 457, 25 A. 413, 415. In that case the court was not considering the testimony of a conviction to impeach a witness, but the meaning of the word as used in a statute. It said "The phraseology of the statute (1812 C. 78, § 26, November Session.) is somewhat misleading, and the use made of the word 'convicted' is largely the cause of the trouble. 'In common parlance, no doubt it (convicted) is taken to mean the verdict at the time of trial; but in strict legal sense it is used to denote the judgment of the court.' Tindal, C. J., in *Burgess v. Boetefeur*, * * * 7 Man. & G. 504; *Smith v. Com.*, 14 Serg. & R. [Pa.] 69; *Blaufus v. People*, 69 N. Y. 107, 25 Am. Rep. 148. The word 'conviction' is undoubtedly *verbum acquivocum*, but we think the meaning given to it by Chief Justice Tindal is the one proper to be applied here." The majority of the decisions throughout the country seem to agree that conviction includes not only the verdict of a jury, but the imposition of a sentence or judgment. Such cases are *State v. Burnett*, 144 Wash. 598, 258 P. 484; *Martin v. State*, 30 Okl. Cr. 49, 234, P. 795; *Commonwealth ex rel. Arnold v. Ashe*, 156 Pa. Super, 451, 40 A. 2d 875; *Broughton v. State*, 148 Tex Cr. R. 445, 188 S. W. 2d 393; *Thomas v. U. S.*, 74 App. D. C. 167, 121 F. 2d 905; *Smith v. State*, 75 Fla. 468, 78 So. 530; *State v. Spurr*, 100 W. Va. 121, 130 S. E. 81; *Crawford v. U. S.*, 59 App. D. C. 356, 41 F. 2d 979; *State v. Roybal*, 33 N. M. 540, 273 P. 919; *In re Ringnalda*, D. C. Cal., 48 F. Supp. 975; *City of Boston v. Santosuosso*, 307 Mass. 302, 30 N. E. 2d 278; *Campbell v. U. S.*, D. C. Cir., 176 F. 2d 45. To the contrary are the following: *Schireson v. State Board of Medical Examiners*, 130 N. J. L. 570, 33 A. 2d 911;

*Egan v. Jones,* 21 Nev. 433, 32 P. 929; *People v. Adams,* 95 Mich. 541, 543, 55 N. W. 461; *Emmertson v. State Tax Comm. of Utah,* 93 Utah 219, 72 P. 2d 467, 113 A. L. R. 1174; *Wilmoth v. Hensel,* 151 Pa. 200, 25 A. 86, 31 Am. St. Rep. 738; *Williams v. U. S.,* 12 Ct. Cl. 192. Some of these cases involve the meaning of "conviction" in a statute allowing evidence to be shown for the purpose of impeaching the credibility of a witness, and others involve the use of the word in other ways. We think, however, it is not necessary for us to pass upon this question here because its decision in favor of the appellant would result only in a new trial at which he could be asked the same question, sentence now having been pronounced in No. 19 and affirmed here. To grant a new trial under such circumstances would make our criminal law and practice an absurdity.

For the reasons stated, the sentence in No. 20 will be affirmed.

> *Judgment and sentence in No. 19 affirmed with costs. Judgment and sentence in No. 20 affirmed with costs.*