In the Matter of JAMES J. GUNNING, Appellant, v MICHAEL J. CODD, as Police Commissioner of the Police Department of the City of New York, and as Executive Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Respondents.

First Department, December 19, 1978

## APPEARANCES OF COUNSEL

*Ira Leitel* of counsel *(Joseph Fallek, P. C.,* attorney), for appellant.

*Susan L. Bloom* of counsel *(L. Kevin Sheridan* with her on the brief; *Allen G. Schwartz, Corporation Counsel),* for respondents.

## OPINION OF THE COURT

BIRNS, J.

We agree with the facts as set forth in the dissenting opinion of Justice SANDLER. We conclude, however, that Special Term properly denied petitioner's application to vacate respondents' determination denying him a pension.

It is not disputed that on April 27, 1977, prior to the date petitioner filed for retirement, he was found guilty by a jury verdict of bribe receiving in the second degree, a class D felony, and official misconduct, a class A misdemeanor. Section 30 of the Public Officers Law, originally enacted in the late 19th century, provides that every office shall be vacant upon the happening of a conviction for a felony or violation of his oath of office.

CPL 1.20 (subd 13), effective September 1, 1971, defines conviction as the entry of a plea of guilty or verdict of guilty. This change in statutory law occurred after the decision in *Matter of Keogh v Wagner* (20 AD2d 380, affd 15 NY2d 569) which held that conviction did not occur until judgment of sentence was imposed.

The *Matter of Keogh* case did indeed adopt a different definition of the term conviction following a line of cases holding that "where disabilities, disqualifications or forfeitures are to follow from a 'conviction' there is no 'conviction' in the eyes of the law unless a sentence is imposed or pronounced and a judgment of conviction entered thereon." *(Matter of Keogh v Wagner, supra,* p 384; see, also, *Helena Rubenstein Int. v Younger,* 71 Cal App 3d 406.) It must surely be noted that the Code of Criminal Procedure, then in effect, contained no definition of the word "conviction" so that the courts were

free in a particular case to adopt a definition which appeared at the time to be appropriate.

In fact, the *Matter of Keogh* majority opinion in the Appellate Division observed *(supra,* p 385) as the dissent acknowledges, that the Legislature could of course "broaden the scope of the term 'conviction' in statutes to give it the meaning urged by appellants" in that case. As an example, the opinion stated *(supra,* p 385) that in the Alcoholic Beverage Control Law " '[c]onvicted' and 'conviction' include and mean a finding of guilt resulting from a plea of guilty, the decision of a court or magistrate or the verdict of a jury, irrespective of the pronouncement of judgment or the suspension thereof" (Alcoholic Beverage Control Law, § 3, subd 8).

It does not follow, however, as implied in the dissent, that a legislative intent to give a new meaning to the term "conviction" in the Public Officers Law can only be established by amendment of that statute. The definition in the CPL of conviction (CPL 1.20, subd 13) was adopted to eliminate the amorphous quality which that word previously possessed in our law (see cases cited in *Matter of Keogh v Wagner,* 20 AD2d 380, affd 15 NY2d 569, *supra).* The comments of the Temporary Commission on Revision of the Penal Law and Criminal Code support this view (New York Cons Laws Serv, Commission Staff Comment, CPL 1.20, vol 7, p 25):

"Subdivisions 13, 14 and 15 change, and present a new pattern with respect to, the terms 'conviction,' 'sentence' and 'judgment.' Under the Criminal Code, 'conviction' is a word of uncertain meaning and without a fixed legal definition, sometimes being used to denote a 'judgment of conviction' and sometimes to indicate merely a verdict or plea of guilty.

"The 'judgment,' under the Criminal Code, is really the 'sentence' or the imposition thereof (see §§ 471 et seq.). This leads to certain awkward situations, such as one where a court, on a post-judgment motion, wishes to review the legality of a sentence but not the validity of the verdict or other proceedings leading up to the sentence or judgment, and perhaps to change or nullify the sentence without affecting the verdict.

"The proposed definitions (a) accord formal recognition to the word 'conviction' as a verdict or plea of guilty (without a sentence); (b) treat a 'sentence' as just that, without any reference to 'judgment'; and (c) make the 'judgment' the comprehensive term which includes both the conviction and

the sentence. *This new terminology, among other matters, provides the precision and severability essential to clarification and expansion of appellate and other post-judgment procedure relating to attacks upon judgments and sentences."* (Emphasis added.)

The purpose of section 30 of the Public Officers Law is to declare vacant the office of those found unfit to continue in public service by virtue of conviction for felony or violation of the oath of office. We have recently been instructed that once a public officer is convicted of a felony the office is vacant immediately *(Matter of Toro v Malcolm,* 44 NY2d 146).

We cannot agree that a jury verdict of guilty in a felony case can on one hand label the offender as unfit to hold office and, on the other, say he may continue in public office until sentenced. This may have been a valid conclusion at one time when the law was uncertain. It should not be valid now where the Legislature has provided a definition of the word "conviction". We also conclude that section 30 of the Public Officers Law and the CPL supplement each other. In our view, it is the function of the courts to harmonize statutes, if possible, and not to perpetuate discordant interpretations (cf. McKinney's Cons Laws of NY, Book 1, Statutes, §§ 126 and 223; 82 CJS, Statutes, § 366 *et seq.*).

We hold, therefore, that the operative effect of section 30 of the Public Officers Law was triggered by the jury verdict herein (see *Thaler v State of New York,* 79 Misc 2d 621) and thus petitioner no longer was a New York City police officer at the time he applied for his pension.

In these circumstances, there is no reason for considering the Administrative Code of City of New York provision (§ 434a-14.0, subd a) that the "commissioner shall have power, in his discretion, on conviction * * * by any court * * * of competent jurisdiction, of a member of the force of any criminal offense * * * to punish the offending party by * * * dismissal from the force".

We find no basis for petitioner's claim for veteran's retirement benefits under subdivision 2 of section B3-36.0 of the Administrative Code (cf. *Matter of Rapp v New York City Employees' Retirement System,* 42 NY2d 1). Petitioner, as a member of the New York City Police Department, was not a member of the New York City Employees' Retirement System and hence subdivision 2 of section B3-36.0 of the Administrative Code is inapplicable. Furthermore, we find no validity to

petitioner's contention that his exclusion from veteran's retirement benefits under subdivision 2 of section B3-36.0 was violative of his constitutional rights to equal protection of the laws.

Judgment of the Supreme Court, New York County (ASCH, J.), entered March 28, 1978, which denied petitioner's application to vacate respondents' determination denying him a pension, i.e., service retirement under both section B18-40.0 of the Administrative Code of the City of New York and veterans' retirement benefits pursuant to section B3-36.0 of the said Administrative Code, should be affirmed, without costs and disbursements.

KUPFERMAN, J. P. (concurring). We have two views of a possible approach to the determination in this matter. The dissent takes the position that a jury verdict is insufficient under section 30 (subd 1, par [e]) of the Public Officers Law, for automatic vacatur of office. Two of us who vote to affirm hold that the operative effect of the law was triggered by the jury verdict.

In concurring, I take a third view, which is that the dissent is correct in requiring something more than a jury verdict. (Cf. *Matter of Mitchell,* 40 NY2d 153.) However, I believe that additional aspect comes from the appropriate action of the commissioner pursuant to section 434a-14.0 of the Administrative Code, which authorizes the police commissioner in his discretion to dismiss from the force a member convicted in a court of competent jurisdiction of any criminal offense. The definition of conviction in CPL 1.20 (subd 13), which covers a verdict of guilty, is a sufficient basis for the police commissioner to proceed after a jury verdict, but before the entry of judgment.

Accordingly, I concur in the result.

SANDLER, J. (dissenting in part). On April 27, 1977, petitioner, a veteran police officer, was found guilty by a jury in the Supreme Court, New York County, of official misconduct and bribe receiving in the second degree. The following day, April 28, 1977, petitioner filed an application for service retirement benefits, intending to retire on May 27, 1977.

Petitioner was served with an order of dismissal by the police commissioner on May 24, 1977. The order, dated May 2, 1977 and declared to be effective as of April 27, 1977, was stated to be pursuant to the "authority vested in the Police

Commissioner, pursuant to Section 434a-14.0 of the Administrative Code and Section 30 of the Public Officers Law to dismiss a member of the Police Department convicted of a crime by a court of competent jurisdiction." As a result of this order, the validity of which presents the issue in this proceeding, petitioner's retirement application was not processed because his dismissal preceded May 27, 1977, the projected effective date of his retirement. Accordingly, retirement benefits were denied since he was not in city service on that date. (Administrative Code of City of New York, § B18-40.0.)

The principal question presented is whether a "conviction," as the term is used in section 30 (subd 1, par e) of the Public Officers Law, occurs upon a jury verdict of guilty or requires in addition the entry of a judgment of conviction upon sentencing.

Section 30 of the Public Officers Law provides in pertinent part:

"1. Every office shall be vacant upon the happening of one of the following acts before the expiration of the term thereof
* * *

"e. His conviction of a felony".

In *Matter of Keogh v Wagner* (20 AD2d 380, affd 15 NY2d 569) the word "conviction" in the quoted subsection was interpreted to mean *(supra,* p 385): "there must not only be an adjudication of guilt, by plea or verdict, but in addition a judgment whether the judgment imposes a sentence or suspends sentence."

This holding *(supra,* p 384) was firmly grounded on the "guiding principle that emerges from the cases, and that is that where disabilities, disqualifications or forfeitures are to follow from a 'conviction' there is no 'conviction' in the eyes of the law unless a sentence is imposed or pronounced and a judgment of conviction entered thereon." (See, e.g., *Blaufus v People,* 69 NY 107, 109; *People v Marendi,* 213 NY 600, 616; *People v Fabian,* 192 NY 443, 449-450.) The court went on to observe that the Legislature could, of course, broaden the scope of the term "conviction" if it so wished, noting that in the Alcoholic Beverage Control Law it was explicitly defined not to require the pronouncement of judgment.

CPL 1.20 (subd 13) enacted some seven years after *Matter of Keogh* (20 AD2d 380, affd 15 NY2d 569) defines "conviction" as the "entry of a plea of guilty to, or a verdict of guilty upon,

an accusatory instrument other than a felony complaint, or to one or more counts of such instrument."

In *Thaler v State of New York* (79 Misc 2d 621) it was held that this definition effectively superseded the *Keogh* ruling with regard to the interpretation of the Public Officers Law, and in the decision here appealed from Special Term agreed. After careful consideration, I am persuaded that CPL 1.20 (subd 13) was not intended to affect the interpretation of the word "conviction" in the Public Officers Law and that there is no persuasive reason why it should be held to have done so.

The definition of "conviction" in CPL 1.20 (subd 13) is one of a group of definitions clearly designed by the draftsmen to be used in the interpretation of the CPL. I am aware of no relevant circumstance that suggests any other purpose.

CPL 1.20 is headed "Definitions of terms of general use in this chapter." The introductory paragraph reads as follows: "Except where different meanings are expressly specified in subsequent provisions of this chapter, the term definitions contained in section 10.00 of the penal law are applicable to this chapter, and, in addition, the following terms have the following meanings".

Almost all of the terms thereafter defined unmistakably have reference to the CPL and only the CPL. This is equally true of the comparable definition section in the Penal Law.

The Practice Commentary following CPL 1.20 opens with the following sentences (Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 1.20, pp 21-22):

"This section epitomizes the unusual emphasis which the Criminal Procedure Law, following the technique of the Revised Penal Law, places upon term definitions.

"Many of the ensuing Articles are introduced by term definition sections, each serving as a small localized dictionary for its Article * * * Similarly, one of the CPL 'Titles' * * * is introduced by an Article (Art. 500; § 500.10) devoted exclusively to term definitions applicable to the other four Articles of the Title (Arts. 510, 520, 530, 540). The instant section containing forty-one definitions of general application, is the giant, overall definitions section which provides a partial lexicography for the entire CPL."

The value of the definition of conviction adopted from the standpoint of the authors of the CPL is immediately apparent from examination of the various sections in which the term is

used. First, this definition enabled the authors of the law to use the single word "conviction" or "convicted" in lieu of the cumbersome phrasing that would otherwise be required to embrace the thought of both a jury verdict of guilty and a plea of guilty. Second, as noted by the Temporary Commission on Revision of the Penal Law and Criminal Code (New York Cons Laws Serv, Commission Staff Comment, CPL 1.20, vol 7, p 25) the definitions of "conviction," "sentence," and "judgment," (CPL 1.20, subds 13, 14, 15) facilitated "clarification and expansion of appellate and other post-judgment procedure relating to attacks upon judgments and sentences."

If, as I think obviously true, "conviction" was defined in CPL 1.20 for use in the CPL, and for that purpose only, the question remains whether it should nonetheless be applied in the interpretation of the same word as it appears in the Public Officers Law. I see nothing in reason or policy to support such an application.

Subdivision 1 of section 30 of the Public Officers Law is concerned with circumstances under which a public office automatically becomes vacant. The decision in *Matter of Keogh v Wagner* (20 AD2d 380, affd 15 NY2d 569, *supra)*, consistent with a uniform body of law defining "conviction" to require a judgment of conviction where forfeiture or disqualification follows, held that a public office should not be automatically vacated until there is a judgment of conviction. The conclusion was right then and is right now.

It is not easy to see why a definition to meet drafting exigencies in one statute should be held to overthrow an authoritative interpretation of that term in another statute addressed to an entirely different problem.

The order of dismissal also invoked the authority vested in the police commissioner pursuant to subdivision a of section 434a-14.0 of the Administrative Code. That section provides in pertinent part: "The commissioner shall have power, in his discretion, on conviction by him, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense * * * to punish the offending party by * * * dismissal from the force".

Although the argument was not pressed by respondent, I have considered whether the word "conviction" as there used might not reasonably be interpreted to apply to a plea of guilty or a jury verdict of guilty, and whether the section as a

whole might not be construed to vest the commissioner with a discretionary power to dismiss following a jury verdict.

However, subdivision 1 of section 75 of the Civil Service Law clearly prohibits dismissal of a civil servant except "for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." The same requirement is set forth with explicit reference to police officers serving in the competitive class of civil service in chapter 834 of the Laws of 1940. When the Administrative Code section is analyzed in the light of these controlling statutory sections, it seems much more probable that the power of the commissioner to dismiss following a conviction by a court of competent jurisdiction was intended only to acknowledge his power to declare a vacancy where one had occurred, under the provisions of section 30 (subd 1, par e) of the Public Officers Law.

The implication of this analysis for the instant case is not a happy one. It involves an undeserved windfall to a former police officer who had dishonored his trust. This need not have happened if the police commissioner, instead of relying on the *Thaler v State of New York* (79 Misc 2d 621, *supra)* decision, had instituted the mandated disciplinary proceedings following the verdict, and it need never happen again.

The unfortunate nature of the result in this one case does not justify the overturning of an authoritative holding, consistent with prior case law, and representing a fair and balanced response to the legal and policy questions presented.

The judgment appealed from should be reversed and the relief sought in the petition granted.

MARKEWICH, J., concurs with BIRNS, J.; KUPFERMAN, J. P., concurs in an opinion; SILVERMAN and SANDLER, JJ., dissent in part in an opinion by SANDLER, J.

Judgment, Supreme Court, New York County, entered on March 28, 1978, affirmed, without costs and without disbursements.