606 A.2d 214

**Robert JONES**

v.

**BALTIMORE CITY POLICE DEPT. et al.**

**No. 126, Sept. Term, 1991.**

Court of Appeals of Maryland.

May 12, 1992.

Michael Marshall (Schlachman, Belsky & Weiner, P.A., both on brief), Baltimore, for appellant.

Michael A. Fry, Asst. Sol. (Neal M. Janey, City Sol., William R. Phelan, Jr., Sr. Sol., Kim I. Montroll, Asst. Sol., all on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

The Law Enforcement Officers' Bill of Rights (LEOBR), Maryland Code (1957, 1992 Repl.Vol.) Art. 27, §§ 727–734D, provides that a law enforcement officer ordinarily is entitled to an administrative hearing before punitive action is taken against that officer. Section 730(a). There is an exception, however. Section 730(c) provides that "[a] law enforcement officer is not entitled to a hearing under this section if the law enforcement officer has been charged and convicted of a felony." The question presented by this appeal is whether an officer has been "convicted of a felony" within the meaning of § 730(c) when that officer has been found guilty of a felony but granted probation before judgment pursuant to Art. 27, § 641 of the Code.

I.

On 12 January 1990, the State's Attorney for Carroll County filed a Bill of Information in the District Court of Maryland sitting in Carroll County, charging Officer Robert

A. Jones of the Baltimore City Police Department with two felony counts of distribution of and possession with intent to distribute child pornography (Art. 27, § 419A) and with four misdemeanor counts involving obscene matter (Art. 27, § 418). Jones was served with the charging document on 18 January and was immediately suspended from duty. On 19 January a suspension hearing was held by the Chief of the Community Services Division, and the suspension was continued, without pay. Following a preliminary hearing in the District Court, criminal charges were filed against Jones in the Circuit Court for Carroll County. On 7 September, at the conclusion of a trial before the court, Jones was found guilty of both felony counts and sentencing was scheduled for 18 December.[1]

On 3 October, the Director of the Internal Investigation Division of the Baltimore City Police Department forwarded the report of that division to the Office of the Commissioner, noting that Jones had been found guilty of two felony charges and concluding that administrative charges of misconduct by violation of criminal statutes and general misconduct had been sustained. The Department concluded that Jones had been "convicted of a felony" within the meaning of § 730(c), and on 5 October terminated his employment without a hearing. On 10 October, the Assistant City Solicitor representing the Department advised Jones' attorney in writing that "[i]n the event that Mr. Jones receives PBJ at his sentencing, the Personnel Order will be immediately rescinded and a trial board scheduled expeditiously."

On 18 December, Judge Raymond A. Beck, Sr. of the Circuit Court for Carroll County, acting pursuant to Art. 27, § 641, stayed the entry of judgment, deferred further proceedings, and placed Jones on probation for three years, with conditions. Contrary to the representation earlier made by the Department's attorney, however, the Depart-

---

1. The misdemeanor charges were nolle prossed by the State as part of a "plea agreement."

ment did not rescind the personnel order terminating Jones' employment and did not schedule a trial board for resolution of administrative charges.[2]  On 19 April 1991, Jones filed a "Petition to Show Cause and for a Writ of Mandamus," alleging that the Department was denying him rights granted by the LEOBR and the United States Constitution, and seeking reinstatement with backpay, damages, and attorneys' fees.[3]  The Department responded with a motion to dismiss the petition, contending, among other things, that Jones' discharge without a hearing was appropriate because Jones had been convicted of a felony.

The matter was heard before Judge John C. Byrnes. Judge Byrnes concluded that a guilty verdict was a conviction within the meaning of § 730(c), and that the subsequent entry of probation before judgment did not alter the fact of conviction.  Thus, he held, Jones was properly discharged without a hearing.  Jones appealed to the Court of Special Appeals, and we issued a writ of certiorari on our own motion before the case was considered by that Court.

## II.

In *Shilling v. State,* 320 Md. 288, 296, 577 A.2d 83 (1990), and in *Myers v. State,* 303 Md. 639, 642–45, 496 A.2d 312 (1985), we pointed out that the meaning of the word "convic-

---

**2.**  At some point in time, the Department scheduled some type of hearing for Jones before a hearing board.  The Department has characterized this as a "name-clearing hearing," but is otherwise vague about the purpose or function of, or authority for, such a hearing. The Department does make clear that the hearing it is offering is not for the purpose of determining whether Jones should be fired—that, the Department insists, is a lawful fait accompli.

**3.**  Section 734 of the LEOBR provides:
   Any law enforcement officer who is denied any right afforded by this subtitle may apply at any time prior to the commencement of the hearing before the hearing board, either individually or through his certified or recognized employee organization, to the circuit court of the county where he is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded.

tion" may vary according to the context and purposes in which it appears. In *Myers,* we said:

At common law a person was not "convicted" of a crime until the court entered a judgment on the finding of guilt. *See* 2 J. Wigmore, *Evidence in Trials at Common Law* § 521, at 731 (J. Chadbourn ed. 1979). In today's usage, however, the meaning of "convicted" and "conviction" turns upon the context and purpose with which those terms are used. *See Hunter v. State,* 193 Md. 596, 606–07, 69 A.2d 505, 509–10 (1949); *see also Conlow v. State,* 441 A.2d 638, 639 (Del.1982) (per curiam) ("The meaning of the term 'convicted' or 'conviction' varies according to the context and purpose of the particular provision—statutory or constitutional—in which it appears or to which it relates."); *State v. Ege,* 274 N.W.2d 350, 355 (Iowa 1979) ("The word 'conviction' may have different meanings within different contexts."). For example, in its general and popular sense "conviction" means the establishment of guilt prior to, and independent of, the judgment of the court. *See, e.g., State v. Hanna,* 179 N.W.2d 503, 507–08 (Iowa 1970); *State v. Delashmutt,* 676 P.2d 383, 384 (Utah 1983) (per curiam); *State v. Herman,* 93 Wash.2d 590, 595–96, 611 P.2d 748, 751 (1980). By contrast, in its legal and technical sense this term means the final judgment and sentence rendered by a court pursuant to a verdict or plea of guilty, and it is frequently used to denote the judgment or sentence. *See, e.g., State v. Superior Court,* 1 Storey 178, 51 Del. 178, 141 A.2d 468, 472 (1958) (" '[C]onviction' means the final consummation of the prosecution against the accused including the judgment or sentence rendered pursuant to a conviction."); *Vasquez v. Courtney,* 272 Or. 477, 480, 537 P.2d 536, 537 (1975) ("The second, more technical meaning [of conviction] refers to the final judgment entered on a plea or verdict of guilty. In [this] case conviction has not been accomplished until the judgment is made by the court."); *Parker v. State Highway Department,* 224 S.C. 263, 268–69, 78 S.E.2d 382, 384 (1953)

("But the word [convicted] is also often used as including both the ascertainment of the guilt of the accused and the judgment thereon by the Court.").

303 Md. at 642–43, 496 A.2d 312. We noted that "where ... the statute under consideration imposes a legal disability, courts have defined 'conviction' in its legal and technical sense." *Id.* at 643, 496 A.2d 312. We quoted the explanation of one commentator that "[t]hese courts reason that the legislature did not intend for valuable rights and privileges to be lost without a final judgment and sentence." *Id.* at 643, 496 A.2d 312, quoting Special Project, *The Collateral Consequences of a Criminal Conviction*, 23 Vand.L.Rev. 929, 953–54 (1970) (footnotes omitted). We noted that "[t]his Court has consistently and repeatedly embraced this particular position." *Id.*

After reviewing a number of Maryland cases dealing with the subject, we concluded as follows:

In view of these cases, it is inescapable that we have consistently equated a "conviction" with the judgment of the court on the verdict and not with the mere determination of guilt. Accordingly, unless the context in which the word is used indicates otherwise, a "conviction" is the final judgment and sentence rendered by a court pursuant to a verdict or plea of guilty. Thus, as we see it, a person is not "convicted" of an offense until the court enters a judgment upon the verdict of guilty.

*Id.* at 645, 496 A.2d 312. We then turned to the question of whether the entry of a probation before judgment in accordance with Art. 27, § 641 would alter that interpretation and would render a verdict a "conviction." We held that it would not.

[W]e hold that probation before judgment under § 641 is not a "conviction," and a person who receives probation before judgment is not convicted of the crime for which he has been found guilty, unless the person violates the probation order and a court enters a judgment on the finding of guilt.

*Id.* at 647–48, 496 A.2d 312 (footnote omitted). Consistent with our holding in *Myers,* the Court of Special Appeals has held that a person granted probation before judgment pursuant to Art. 27, § 641 is not a "person convicted of a crime" within the meaning of § 645A(a) of the Maryland Post Conviction Procedure Act, Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 645A–645J. *Gakaba v. State,* 84 Md. App. 154, 155–57, 578 A.2d 299 (1990).

*Shilling v. State, supra,* is not to the contrary. In *Shilling,* we held that a person who had been given probation before judgment for a violation of § 21–902(a) or (b) of the Transportation Article was ineligible for a second probation before judgment for a violation of either of those sections committed within five years after the previous violation. We noted, however, that the legislature had explicitly provided that a disposition of probation before judgment would be considered a "violation" in that instance. Article 27, § 641(a)(2) provided that "[a] person is in violation of § 21–902(a) or (b) if that person receives probation under this section."

We also held in *Shilling* that under those circumstances an earlier violation of § 21–902(a) or (b) which resulted in a probation before judgment would have to be treated as a "prior conviction" within the meaning of Maryland Rule 4–245(c), thus requiring that the State give the defendant notice of the earlier violation at least 15 days before sentencing. We reasoned that the purpose of Rule 4–245(c) was to provide the defendant with an opportunity to be heard where the State alleges a prior conviction or violation of a statute, and that where the legislature had mandated that an earlier probation before judgment be treated as a conviction for purposes of sentencing, the notice was required. *Shilling,* 320 Md. at 296–97, 577 A.2d 83.

The Department argues that in this case we should interpret "conviction" to include a verdict of guilt followed by probation before judgment because the legislature, in enacting Section 730(c) of the LEOBR, intended to avoid the additional expense and inconvenience of an administrative

hearing board when a police officer had been found guilty of a felony.

What is now Section 730(c) was added to the LEOBR by Chapter 205 of the Laws of 1986, which enacted House Bill 439. House Bill 439 appears to have been introduced on the recommendation of the Maryland Municipal League. In its letter of 30 January 1986 to the House Judiciary Committee the League described several instances of law enforcement officers who had been convicted of serious crimes, but who insisted on a separate administrative hearing covering the same charges. The League concluded:

> Our members believe that a hearing under these conditions is unnecessary, causes unneeded delay in replacing an officer, and wastes the taxpayers' money. If enacted, HB 439 would address some of this problem by providing that an officer is not entitled to the extra police agency hearing if the officer has been convicted of a felony.

There is no indication in the legislative history that the Maryland Municipal League in recommending the change, or the legislature in adopting it, contemplated a "conviction" in any sense other than the technical and legal meaning of that word which we set forth a year earlier in *Myers v. State, supra, i.e.,* a judgment of conviction. The result sought by House Bill 439 will be achieved whenever a law enforcement officer is found guilty of a felony and sentenced; it is only in the rare instance where an officer is granted probation before judgment after being found guilty of a felony that this problem will arise.

The effect of House Bill 439 is a legislatively mandated form of the issue preclusion arm of res judicata—issues finally litigated adversely to the officer in the criminal litigation are to be taken as established in the subsequent administrative proceeding. This approach is entirely compatible with the established principles of offensive nonmutual collateral estoppel. *See Welsh v. Gerber Products,* 315 Md. 510, 516–18, 555 A.2d 486 (1989). In utilizing principles of issue preclusion, however, we note that the judgment

serving as the basis for the subsequent preclusion ordinarily must be a final judgment.

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement of Judgments (Second)* § 27 (1982). *See also* §§ 28 and 29 of the *Restatement; Cassidy v. Board of Education,* 316 Md. 50, 62, 557 A.2d 227 (1989); and *Welsh v. Gerber Products, supra,* 315 Md. at 516, 555 A.2d 486. Although we have held that probation before judgment may constitute a final judgment within the meaning of a statute governing appeals, we have made it clear that probation before judgment is not a final judgment of conviction for most purposes. *See State v. Hannah,* 307 Md. 390, 400–01, 514 A.2d 16 (1986). We do not believe the legislature intended probation before judgment to be a final judgment for purposes of issue preclusion.

Finally, we note that the legislature intended that a grant of probation before judgment, unless subsequently altered by a violation of that probation, should have the effect of wiping the criminal slate clean. Article 27, § 641(c) provides:

> (c) *Fulfillment of terms of probation.*—Upon fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. The discharge is final disposition of the matter. Discharge of a person under this section shall be without judgment of conviction and is not a conviction for purposes of any disqualification or disability imposed by law because of conviction of crime.

A person who is granted probation before judgment is entitled, at the time he is discharged from probation or after three years have passed from the date probation was granted, to have all police and court records of his arrest, charge, and disposition expunged. *See* Art. 27, § 737; Maryland Rules 4–501 through 4–512. A disposition of proba-

tion before judgment cannot be considered a predicate offense for imposition of certain recidivist penalties imposed by law; there is no assessment of points when probation before judgment is granted after a finding of guilt on a motor vehicle charge; and a sentence of probation before judgment is not entered upon a defendant's public driving record. *Shilling v. State, supra,* 320 Md. at 298, 577 A.2d 83 (McAuliffe, J., concurring).

Giving due weight to the various factors we have considered, we conclude the legislature intended the preclusive effect of § 730(c) of the LEOBR to operate only when the conviction of a law enforcement officer for a felony was a conviction in the legal and technical sense, *i.e.,* a judgment of conviction. The context and legislative history of § 730(c) do not suggest a contrary result, and it is therefore appropriate that we follow the interpretation we set forth in *Myers v. State, supra:*

> [P]robation before judgment under § 641 is not a "conviction," and a person who receives probation before judgment is not convicted of the crime for which he has been found guilty, unless the person violates the probation order and a court enters a judgment on the finding of guilt.

303 Md. at 647–48, 496 A.2d 312 (footnote omitted).

The dissent offers a number of reasons why it may be in the public interest to have a verdict followed by probation before judgment in a felony case serve as an adequate substitute for an administrative determination of guilt in a police disciplinary proceeding. Whether we agree that such a rule would be beneficial is immaterial—we are not a legislative body and we are not permitted to engraft a strained or artificial interpretation upon a statute to achieve a result that comports with our idea of societal needs. *Simpson v. Moore,* 323 Md. 215, 223–28, 592 A.2d 1090 (1991) (court will not rewrite statute to achieve a desired result); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 516 n. 4, 525 A.2d 628 (1987) (a court is not wholly free to

rewrite a statute merely because of some judicial notion of legislative purpose).

It follows that Jones should not have been discharged without a hearing. Upon remand, the Circuit Court for Baltimore City should direct the Department to promptly furnish Jones the hearing to which he is entitled under the LEOBR. We do not address questions of backpay or attorneys' fees, because those issues were not addressed below. We note, however, that Jones' current legal status continues to be suspension without pay, and we believe any questions related to claims for backpay, or for attorneys' fees pursuant to 42 U.S.C. § 1988, should await the outcome of the administrative proceedings against Jones.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS OF THIS APPEAL TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

Dissenting opinion by CHASANOW, J. in which KARWACKI and ROBERT M. BELL, JJ., join.

CHASANOW, Judge, dissenting.

In essence, the majority says that the Law Enforcement Officers' Bill of Rights (LEOBR) requires a whole new trial—an administrative one this time—to determine whether Robert A. Jones has, indeed, committed the felonies he was already adjudged to have committed in a Maryland court of law. Until then, according to the majority, Jones is entitled to remain an officer of the law. The General Assembly could not have intended such a result.

We must remember Jones' guilt is not in question. His culpability for violating the laws of this state by purveying child pornography was determined beyond a reasonable doubt in a two-day circuit court trial. He waived his right to appeal those verdicts. Jones was also punished for his transgressions when the trial judge ordered him to perform

200 hours of community service and pay a $500 fine. But because the judge granted Jones probation before judgment—and only because of that—the majority finds that he was not "convicted" and is entitled to remain a law enforcement officer until he gets an administrative hearing to determine his guilt yet again. Surely the legislature did not intend to subject the witnesses to the possible trauma and inconvenience of another hearing, to force the government to again marshal the evidence used to convict, and to require a new hearing to prove by a preponderance of the evidence the exact same issue that has already been proven beyond a reasonable doubt in a criminal trial, solely because the trial judge imposed a sentence of probation before judgment.

On January 12, 1990, Jones was charged with the felonies of distribution and possession with intent to distribute child pornography in violation of Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 419A. On January 18, 1990, while the charges were pending, Jones was suspended without pay by the chief of police (in Baltimore City the chief of police is designated as police commissioner) and that suspension was ratified after a hearing pursuant to Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 734A(3), which provides:

"(i) Emergency suspension of police powers without pay may be imposed by the chief if a law enforcement officer has been charged with the commission of a felony.

(ii) Any person so suspended shall be entitled to a prompt hearing."

On September 7, 1990, at a court trial in the circuit court, Jones was found guilty of distribution of child pornography and of possession with intent to distribute child pornography. Both charges are felonies and each carries up to ten years imprisonment. Jones' sentencing was set for December 18, 1990. After Jones' trial, but before his sentencing, the chief of police acting in reliance on Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 730(c) terminated Jones' employment as a police officer. That section of the Code provides that a law enforcement officer may be terminated without a hear-

ing if the officer has been charged and "convicted" of a felony. It states:

> "*Hearings for convicted felons.*—A law enforcement officer is not entitled to a hearing under this section if the law enforcement officer has been charged and convicted of a felony."

At his sentencing, Jones received three years supervised probation before judgment (PBJ) pursuant to Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 641. He was also fined $500 and required to perform 200 hours of community service. Art. 27, § 641(a) states in pertinent part:

> "Whenever a person accused of a crime ... *is found guilty of an offense,* a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person *after determination of guilt* ... may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate." (Emphasis added).

By accepting PBJ, Jones conceded the finality of the *verdicts* of guilty because, in order to receive PBJ, Jones had to both consent to that disposition and waive his right to appeal the verdicts.

Jones then filed a petition for writ of mandamus alleging that the police department violated his constitutional and statutory rights by refusing to reinstate him and give him back pay. His complaint alleged that, since he received PBJ, he no longer is "charged with" and was not "convicted" of any crimes; therefore, he should not have been terminated without a hearing and is entitled to reinstatement, as well as back pay and benefits.

The City objects to readjudicating the same factual finding of guilt that the circuit court found beyond a reasonable doubt. The full hearing under the LEOBR to which the majority holds Jones is entitled is a two-stage process. The first stage requires a finding of guilty or not guilty, simply

a redetermination of what the circuit court has already decided beyond a reasonable doubt. The second stage, if there is a finding of guilty, is for the board to make a non-binding recommendation of sanctions to the chief, and for the chief to make the decision whether to dismiss. Art. 27, § 731(a) provides in pertinent part:

"Any decision, order, or action taken as a result of the hearing shall be in writing and shall be accompanied by findings of fact. The findings shall consist of a concise statement upon each issue in the case. A finding of not guilty terminates the action. If a finding of guilt is made, the hearing board shall reconvene the hearing, receive evidence, and consider the law enforcement officer's past job performance and other relevant information as factors before making its recommendations to the chief."

The City concedes that termination of even a convicted felon is not mandatory, and is willing to give Jones a stage-two LEOBR hearing and allow him an opportunity to establish that, in spite of the guilty verdicts, he ought to be reinstated. The City is unwilling to, and should not have to, give Jones a stage-one LEOBR hearing to redetermine guilt.

The primary purpose of a stage-one LEOBR hearing is to make a finding of guilty or not guilty and then, if the finding is guilty, submit a non-binding recommendation as to punishment to the chief of police. *See DiGrazia v. County Exec. for Mont. Co.*, 288 Md. 437, 440–41, 418 A.2d 1191, 1194 (1980). The hearing board is to make "findings of fact" on "each issue in the case." Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 731(a). In essence, the administrative hearing would be duplicative of the criminal trial and would provide appellant no more protection than did the criminal trial itself. On the other hand, requiring an agency to hold a hearing to consider the same facts a second time will consume considerable time of police personnel, the city attorney, the state police investigator, and the three ranking officers of other municipal departments who serve as

the hearing board. Relitigating guilt would also cause witnesses to suffer needless trauma and inconvenience.

The City is willing, and arguably may be required under other provisions of the LEOBR, to give Jones a hearing similar to the post-suspension hearing under § 734A(3)(ii) to consider whether, despite the finding of guilty, he should be reinstated. The City should not be required to give Jones a new administrative stage-one hearing to simply redetermine "guilt" because Jones has already been adjudicated guilty by the circuit court. Jones acknowledges the City's offer of a "name clearing" hearing; he even states in his brief that this hearing "probably would have provided Officer Jones with the procedural safeguards mandated by the LEOBR." His contention is that, since he is no longer "charged" and he was not "convicted," he is automatically entitled to reinstatement, back pay, and a whole new hearing to determine guilt.

This Court has emphasized that "the word 'conviction' has different meanings and may vary according to the context and purpose of the statute in which it appears. We [have] noted that probation before judgment was a conviction in certain instances, but not a conviction in others." *Shilling v. State,* 320 Md. 288, 296, 577 A.2d 83, 87 (1990) (citing *Myers v. State,* 303 Md. 639, 496 A.2d 312 (1985)). In *State v. Hannah,* 307 Md. 390, 514 A.2d 16 (1986), we held that probation before judgment was a "final judgment," and although the defendant may not appeal because of the required waiver of appeal, the State may appeal from this "final judgment" when the court imposes PBJ in violation of a statute.

"[I]n its general and popular sense 'conviction' means the establishment of guilt prior to, and independent of, the judgment of the court." *Myers,* 303 Md. at 642, 496 A.2d at 313, and cases cited therein. "By contrast, in its legal and technical sense this term means the final judgment and sentence rendered by a court pursuant to a verdict or plea of guilty, and it is frequently used to denote the judgment or sentence." *Id.* at 642–43, 496 A.2d at 313–14. This

Court has, as has the General Assembly, sometimes used the word "conviction" in its "general and popular sense" to mean the verdict of guilty alone, rather than the verdict coupled with the sentence. For a few recent examples see *Harris v. State*, 324 Md. 490, 492, 597 A.2d 956, 957 (1991) (the defendant was "convicted by a jury"); *Richardson v. State*, 324 Md. 611, 613, 598 A.2d 180, 181 (1991) (defendant was "convicted by a jury"); *Bowie v. State*, 324 Md. 1, 4, 595 A.2d 448, 449 (1991) (the defendant was "convicted by a jury"); *Biggus v. State*, 323 Md. 339, 345, 593 A.2d 1060, 1063 (1991) (The circuit court imposed two consecutive ten-year prison sentences for the two sexual offense "convictions" and merged "conviction" on the other count. For the conviction on the weapons charge, the defendant was sentenced to three years imprisonment.); *White v. State*, 322 Md. 738, 740, 589 A.2d 969, 970 (1991) (defendant was "convicted of murder and related offenses by a jury"); *Johnson v. State*, 321 Md. 694, 695, 584 A.2d 700, 701 (1991) (defendant was "convicted by a jury").

In *Langworthy v. State*, 284 Md. 588, 399 A.2d 578 (1979), *cert. denied*, 450 U.S. 960, 101 S.Ct. 1419, 67 L.Ed.2d 384 (1981), the defendant was found guilty, but not criminally responsible by reason of insanity. The guilty finding without sentence, indeed without criminal culpability, was found to be a "conviction." We stated:

> "Despite the lack of a 'sentence' in the context of punishment inflicted, the determination of the trial court as to the disposition of the defendant is as final a judgment following the *conviction* as if a sentence inflicting punishment had been imposed." (Emphasis added).

*Id.* at 597, 399 A.2d at 583.

Jones does not contend that any provision of the PBJ statute precludes his guilty verdict from being treated as a conviction. He recognizes, as does the majority opinion, that whether the legislatively created disposition of PBJ is meant to be a "conviction" as used in the LEOBR is a question of legislative intent. The majority opinion reaches the conclusion that

"the legislature intended the preclusive effect of § 730(c) of the LEOBR to operate only when the conviction of a law enforcement officer for a felony was a conviction in the legal and technical sense, *i.e.,* a judgment of conviction. The context and legislative history of § 730(c) do not suggest a contrary result...."

(326 Md. at 489, 606 A.2d at 218). I believe an examination of the context and legislative history of § 730(c) in fact indicates that the legislature intended "conviction" to have its common meaning of verdict rather than its technical meaning of verdict plus sentence. That section was introduced in the 1986 session of the Maryland legislature as House Bill 439 at the request of the Maryland Municipal League (MML). The purpose of the bill was specifically addressed in a letter from MML to the Senate Judicial Proceedings Committee, dated January 30, 1986. MML wrote:

"HB 439 is a reasonable bill that eliminates an unnecessary and expensive hearing without lessening an officer's due process protections. Conviction of a police officer for a serious criminal offense is rare, but when it occurs the public should not have to pay the expenses for a hearing *on facts already settled in a criminal trial.*" (Emphasis added).

The Senate Judicial Proceedings Committee embraced that proposition and stated:

"This bill eliminates an unnecessary and expensive hearing without lessening the officer's due process protections. When a police officer is convicted of a serious criminal offense, the public should not have to pay the expense of a hearing *on facts already settled in a criminal trial.*

   \*    \*    \*    \*    \*    \*

The intent of this bill is to provide that a law enforcement officer convicted of a felony is not entitled to a hearing under the Law Enforcement Officers' Bill of Rights. *The purpose of the bill is to eliminate an expensive and unnecessary hearing.*" (Emphasis added).

General Assembly of Maryland, Committee Report System, Summary of Committee Report, Senate Judicial Proceedings Committee, House Bill 439 Reported Favorably (31 March 1986).

An obvious purpose of § 730(c) is to protect the public from police officers who commit felonies. The chief of police can suspend without pay a police officer who is charged with a felony. I believe the chief of police has a parallel right to discharge a police officer adjudicated guilty of that felony prior to, and regardless of, the sentence imposed. A mere charge of a felony is sufficient to authorize suspension of a police officer without pay. The mere adjudication of guilt in a circuit court ought to be sufficient to authorize termination.

PBJ requires that the defendant be adjudicated guilty either by plea or trial. PBJ may, however, indicate that the defendant does not deserve the full measure of punishment and stigma that the crime ordinarily carries. Whether PBJ constitutes a "conviction" depends on the legislative intent when using the word "conviction." If "conviction" was intended to mean the factual finding that the crime was committed, PBJ should be a "conviction." If "conviction" was intended to mean the determination that the crime was committed by a person who deserves all of the punishment and stigma ordinarily resulting from an adjudication of guilty, then PBJ would not be included as a conviction. When "conviction" is used in a statute, we must search for legislative intent with respect to the meaning of the word.

By focusing on the PBJ, the majority exalts the sentencing phase of criminal proceedings and forgets the critical element before us: that Jones is guilty of the crimes charged. Whatever value this focus on PBJ may have in other contexts, it has no place in evaluating Jones' LEOBR claims. I believe the issue is not merely whether PBJ was intended to be a "conviction," but is more precisely whether the verdict of guilty was intended to be a "conviction." The majority holds that the legislature intended that there can be no termination of a police officer's employment despite a

plea of guilty or a verdict of guilt of even the most severe felony unless and until the officer is sentenced for the felony. Thus, a police officer adjudicated guilty of a felony who is remanded to jail pending sentencing cannot be terminated because there has been no "conviction," and even though in jail pending sentencing, the person remains a police officer until again adjudicated guilty at a police trial board hearing or until sentenced to something other than PBJ. It seems more logical that the legislature intended that the chief of police have the authority to terminate any police officer found guilty of a felony. Police officers should be law-abiding people in whom the public can place confidence and trust. In holding that a police officer cannot be fired immediately after being adjudicated guilty of a felony, this Court threatens the public's right to be assured that police officers are men and women of moral integrity. I see no reason why termination without a hearing should await sentencing and why a whole new determination of guilt should be required solely because the trial judge chose one sentencing option (PBJ) over another.

In *Gunning v. Codd,* 65 A.D.2d 415, 411 N.Y.S.2d 280, 283 (1978), the court stated, "We cannot agree that a jury verdict of guilty in a felony case can on one hand label the offender as unfit to hold office and, on the other, say he may continue in public office until sentenced." On further appeal to the state's highest court, that court noted that the vacatur of public office is absolute upon conviction, and subsequent events, such as a stay of execution of judgment or even reversal of conviction on appeal, do not affect the vacatur. *Gunning v. Codd,* 49 N.Y.2d 495, 427 N.Y.S.2d 209, 210, 403 N.E.2d 1208 (1980). The *Gunning* court reasoned that, "to await vacatur of a public office until judgment is entered, moreover, would unconscionably reward those who, despite having breached the public trust, may purposefully delay sentencing and thwart public policy." 427 N.Y.S.2d at 211, 403 N.E.2d at 1210. Additionally the court said:

"Once the jury determined, beyond a reasonable doubt, that petitioner committed a felony, public policy demands that his position be vacated immediately.... By the same token, to permit a public officer, found guilty by a jury of his peers, to remain in office pending sentencing and thereby afford him the opportunity to obtain a lifetime pension would circumvent the clearly defined purpose of [New York's] Public Officers Law. Such a result simply cannot be tolerated."

*Id.*

If "conviction" is given its everyday meaning, it implies that adjudication of guilt of a felony is sufficient to discharge a law enforcement officer regardless of the sentence imposed. The General Assembly gave the chief of police the power to terminate based on the felonious conduct that formed the basis of the guilty verdict. This interpretation neither alters protections afforded an officer during an investigation nor affects rights during interrogation. It simply allows agency personnel to terminate a law enforcement officer who is adjudicated to be a felonious law breaker, regardless of the particular sentence imposed.

Although accepting Jones' argument that, since he was given PBJ he was not "convicted," the majority fails to address Jones' contention that, since he was not "convicted," he must be reinstated with back pay. It is unclear if the majority is suggesting that Jones' "charges" and accompanying suspension without pay should continue for the entire three years of his probation, or if it is suggesting that, since he had a trial and was not "convicted," Jones may be eligible for full reinstatement and back pay, especially if at his new hearing the City is unable to secure all of the witnesses and evidence to again prove Jones is guilty of the felonies.

It is clear that after the guilty verdicts, if Jones' fine and probation had *not* been "before judgment," Jones would be "convicted" and could be discharged without a hearing. For the reasons stated, I do not believe that, merely because the judge chose to label the fine and probation

"before judgment," there must be a full new administrative hearing to once again determine if Jones is guilty of these heinous felonies as a precondition to the chief of police being able to discharge Jones. Where a police officer has received due process in a criminal trial, no need exists, regardless of the sentence imposed, to provide the officer with a second opportunity to relitigate issues that were considered during the trial and resulted in a finding of guilt. I respectfully dissent. Judges KARWACKI and ROBERT M. BELL have authorized me to state that they join in the views expressed in this dissenting opinion.